OPINION
Appellants, Paula Collins ("Paula") and Jimmy Clendenen, Sr. ("Jimmy, Sr.") separately appeal an order of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of Jimmy Clendenen, Jr. ("Jimmy"), born June 23, 1989, and Novena Clendenen ("Novena"), born April 18, 1991 to appellee, Butler County Children Services Board ("BCCSB"). Paula and Jimmy Sr. are, respectively, the biological mother and father of Jimmy and Novena.
On March 18, 1994, BCCSB filed complaints in Butler County Juvenile Court alleging that Novena and Jimmy were dependent children under R.C. 2151.04(C).[1] The court entered an ex parte emergency custody order and temporarily placed the children in shelter care. At a shelter care hearing on March 23, 1994, testimony indicated that Paula's husband, Jeff Collins, had been abusive to her and the children. Paula testified that she had obtained a temporary restraining order against Collins because she was tired of her and her kids "takin' the beatin'." After the hearing, the children were returned to Paula's custody and BCCSB was ordered to provide protective supervision. Paula was ordered to prevent Jeff Collins from having any contact with herself, Jimmy or Novena. On April 18, 1994, another hearing was held wherein BCCSB claimed that Paula had violated the court order concerning Jeff Collins. Paula and Jimmy, Sr. were granted temporary custody of the children and were ordered not to allow them to be unsupervised.
On May 27, 1994, Jimmy, Sr. moved to obtain legal custody of both children. The record appears to indicate that Jimmy, Sr. was granted temporary custody of the children. On July 7, 1994, BCCSB filed an amended complaint, adding allegations that Novena was an abused child under R.C. 2151.031(C) and that Jimmy was dependent under R.C. 2151.04(D).[2]
An adjudication hearing was held on July 20, 1994. Both Paula and Jimmy, Sr. admitted that the children were dependent and BCCSB withdrew the other allegations in the amended complaint. Temporary custody continued with Jimmy, Sr. The no contact order between the children and Jeff Collins was also continued.
A dispositional hearing was held on July 28, 1994. It was continued until August 10, 1994, and then until September 21, 1994. On September 3, 1994, BCCSB filed complaints alleging Jimmy and Novena to be dependent and neglected children. After a shelter care hearing on September 7, 1994, the complaints were dismissed in light of the case that was already in progress. BCCSB moved for and was granted temporary custody of the children on the ground that the children were living with a friend of Jimmy Sr., and Jimmy was not enrolled in school.
The dispositional hearing continued on December 19, 1994. The court found that neither Paula nor Jimmy, Sr. had the minimum skills and resources necessary to provide adequate parental care to the children. Placing the children with Paula was unacceptable, largely, but not solely, because of her relationship with Jeff Collins, an "abusive and disturbed man who deeply and negatively affected the lives of [the] children, especially Novena." Placing the children with Jimmy, Sr. was also undesirable for a variety of reasons, including his homelessness, history of employment instability, substance abuse problems, financial problems, and inadequate hygiene (e.g., scabies, lice). Temporary custody was granted to BCCSB. In addition, the court adopted a case plan which ordered Paula and Jimmy, Sr. to visit the children regularly, to participate in parenting, education, and individual counseling, to be assessed for substance dependency, and to obtain suitable housing and employment.
On June 6, 1995, BCCSB filed a motion for permanent custody of the children. A hearing on the motion was held on March 4 and 5, 1996. By judgment entry filed on March 15, 1996, the trial court ordered that both children be placed in the permanent custody of BCCSB and terminated Paula and Jimmy, Sr.'s parental rights. Both Paula and Jimmy, Sr. appealed, each filing separate briefs.
Paula and Jimmy, Sr. each present one assignment of error for review. Both parties assert that the trial court's decision is against the manifest weight of the evidence. Paula states that R.C. 2151.412(G)(1) describes an order of priorities to be followed concerning the placement of children.[3] She argues that a court may not award custody to an agency without first demonstrating that the parent is "incapable and unwilling to assume custody of the child." Paula then asserts that she is both willing and able to be a parent to Jimmy and Novena.
For his part, Jimmy, Sr. contends that because he has found adequate housing and maintained steady employment, he has demonstrated that the children can be placed with him within a reasonable time. For this reason, he argues the children should be returned to his care. We disagree with both parents' assertions.
We begin by noting that, contrary to Paula's assertions, R.C.2151.412(G) does not require a trial court to demonstrate that a parent does not care for her children or is unwilling to assume legal custody of them before awarding permanent custody to an agency. As we observed in In the matter of Gilbert (Aug. 5, 1996), Butler App. No. CA95-10-179, unreported, R.C. 2151.412(G) "does not mandate the [agency] or the court to act in any specific manner, but rather suggests some criteria to be considered in making a decision as to case plan goals. More relevant * * * are the specific requirements relating to actions for permanent custody enumerated in * * * R.C. 2151.414." Id. quoting In re: Hiatt (1993), 86 Ohio App.3d 716, 722.
R.C. 2151.414(B)(1) allows the trial court to grant permanent custody of a child to an agency if the court determines by clear and convincing evidence that it is in the child's best interest to do so and the child cannot or should not be placed with either of his parents within a reasonable time. Clear and convincing evidence is "that degree of proof which is more than a mere `preponderance of the evidence,' * * * and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Schiebel (1990),55 Ohio St.3d 71, 74, certiorari denied in Warner v. Ohio (1991),499 U.S. 961, 111 S.Ct. 1584.
When making a best interest determination, a court must consider all relevant factors, including: the reasonable probability that the child will be adopted and whether a grant of permanent custody would facilitate an adoption, the child's relationship with his parents and others, the wishes of the child with regard for the child's maturity, the custodial history of the child, and the child's need for a legally secure permanent placement. R.C.2151.414(D).
In determining whether a child can be placed with his parents within a reasonable time period, the court must consider all relevant evidence. R.C. 2151.414(E). The court shall enter a finding that the child cannot be placed with his parents if one or more of several factors enumerated in R.C. 2151.414(E) are found to be the case. Those factors include:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. * * *
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]
At the permanent custody hearing, Dr. Helen Jane Sites of the Therapeutic Interagency Preschool Program (TIPP) testified that from April 1993 until August 1994, a time when he was living with either Paula or Jimmy, Sr., Jimmy was enrolled in TIPP. Dr. Sites described the program as accepting children with emotional, developmental, or behavioral problems. Dr. Sites stated that Jimmy failed two hearing tests, but that, despite "countless verbal, and written notices," neither parent addressed Jimmy's hearing problems. Jimmy's attendance at TIPP was poor. During the sixteen months he was enrolled, Jimmy was absent one hundred nineteen out of two hundred twenty-four days, primarily for reasons that she did not feel were "legitimate." Dr. Sites also stated that while Jimmy was in his parents' care, Jimmy's interactions, dress, demeanor, and emotional and social development were a "fundamental concern." Jimmy attended school without socks or underwear or wearing "very, very soiled clothes with odors." Head lice were "[f]requently a problem." During a home visit, Dr. Sites observed "broken glass items lying on the floor * * * food * * * feces * * * I could not walk there was not a clear path where I did not encounter something of danger * * *." Dr. Sites also testified that Jimmy came to school with bruises and that those seemed related to changes in his behavior that included anger and opposition to the staff. She stated that a wide range of services (transportation, therapists, educators, libraries, toy lending, clothing) were offered to Jimmy, Sr. and Paula, but that they did not take advantage of them.
Ellen Briggs, a therapist at Catholic Social Services, testified that in March 1995 she saw Paula and Jimmy, Sr. three times. In the third session, which lasted ten minutes, they signed a treatment plan which included working on parenting skills. Neither parent ever returned to complete the counseling program.
Janet Conder, the BCCSB supervisor assigned to the Clendenen case, had been working with the family since 1989. Conder testified that between March 1994 and the date of the hearing, Paula had lived in approximately eight residences, as did Jimmy, Sr. As to visitation, Conder testified that both parents had foregone visiting the children from September 1994 until May 1995 solely because they had not obtained a document certifying that they were free from lice and scabies. Conder also stated that more than twelve agencies had offered their services to one or more of the family members.
Sarah Wilson, a caseworker with BCCSB, testified that at the time of the hearing the children were living with foster parents who expressed an interest in adopting them and were licensed to do so. She stated that the children expressed a desire to be placed in the foster home. Wilson also testified that both parents missed several visits with the children and when they did visit would bring people with them. Wilson stated that she visited Paula's apartment and that it did not have appropriate sleeping quarters for two children.
Karen Lavender, a parent educator with the Development of Living Skills Program at Ohio State University, testified that she worked with Paula in 1986-87 and again in 1992 and 1994, and with Jimmy, Sr. in 1994. Lavender stated that housekeeping and personal hygiene were a "consistent problem" with Paula and the children. Jimmy, Sr. kept a cleaner house and person than Paula, but had other problems taking care of the children. He had trouble "following through" when it came to getting such aid as food stamps or ADC, or making medical appointments for the children. Lavender thought that Jimmy, Sr. was getting a lot of help parenting the children, particularly from his sister, and observed that Jimmy, Sr. missed more parenting sessions than he attended and that he did not complete the parenting program.
In addition to this testimony, the exhibits at trial, including several years of notes by caseworkers from various agencies, present a truly disturbing picture of two young children who were repeatedly found to be lice-ridden and dirty, ill-fed, unattended to, homeless, or living in squalid, vermin-infested conditions. In addition, there is evidence that both children were physically and sexually abused. Several agencies were available to assist the parents with virtually any need they might have, including housing, food, transportation, parenting skills, and counseling on a host of issues. Yet, the parents demonstrated consistently that they were unable to provide the most basic necessities for their children, despite the toll their actions were taking on their children's physical, emotional, and social development.
The trial court's judgment entry states the following with regard to Paula and Jimmy, Sr.:
 The genesis of this case can be found in the unfortunate fact that mother decided to establish a relationship with Jeff Collins. A person whom mother married despite his abusiveness toward her and her children. This abusive situation caused BCCSB and this court to remove her children from her care and to place them, first, in the custody of Jimmy Clendenen, the father, and eventually in the custody of BCCSB when placement with the father proved to be unworkable.
 In response to that situation, the court adopted a simple case plan. Both parents were ordered to visit their children regularly as arranged through the BCCSB, to participate in parenting education and individual counselling, to undergo a substance dependency assessment, and to obtain appropriate housing.
 Mother has failed to meet any of the pertinent requirements of the case plan. Although her excuses are varied, the sum of her efforts over the past two years have accomplished little. To her credit, she has maintained relatively steady employment and a therapeutic relationship with her counsellor at the battered women's shelter.
 The salient orders of this court remain, however, unfulfilled. Mother does not have appropriate housing. She has visited her children sparingly, foregoing visits over five months due to her reluctance to be screened for scabies and head lice. She left individual counselling due to a difference of opinion with the therapist and failed to re-apply until a few weeks before this case was set to be heard. She failed to undergo a substance dependency evaluation citing financial constraints, while she admits that she has been working steadily for some time. Finally, she failed to complete in-home parenting education. In total, the evidence paints a compelling picture of a mother who outwardly expresses care for her children. That outward expression is not, in any credible extent, consistent with her actions, actions which demonstrate clearly her lack of commitment to her children.
 The evidence relating to father was of a slightly different nature. Father presented unrebutted evidence that his new residence is appropriate for the children. He has maintained steady employment. His relationship with his children appears to be healthy and appropriate.
 Father's compliance with the case plan, unfortunately, progressed no farther. Like mother, he has visited his children sparingly, foregoing visits over five months due to his reluctance to be screened for scabies and head lice. He too, left individual counselling due to a difference of opinion with the therapist and failed to re-apply until a few weeks before this case was set to be heard. Additionally, he failed to undergo a substance dependency evaluation. Finally, he, like mother, failed to complete in-home parenting education.
 The parents, by their actions and father by his testimony, have demonstrated that they believe that the removal of the children from father's care was unnecessary. In response to that belief, the parents, despite their professed love and attachment to their children, decided to sit on their hands and allow their children to be raised by the state for approximately one and one-half years. In light of this benign neglect and apparent laziness by both parents, it would be irrational to conclude that these are the actions of parents who are going to be able to care for their children in any reasonable amount of time. (Footnotes omitted.)
The trial court found that the children could not be placed with either parent within a reasonable time. The trial court also determined that because the children had recently been placed in a home where there was a "significant possibility of adoption," granting permanent custody to BCCSB was in the children's best interest. In reviewing a trial court's grant of permanent custody of children to a public agency, an appellate court cannot reverse a decision supported by competent, credible evidence as being against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80; C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279; In re: Lay (1987),43 Ohio App.3d 78, 80. Having thoroughly reviewed the record, we find that it fully supports the trial court's determination. The assignments of error are overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] R.C. 2151.04(C) states:
 As used in this capter, "dependent child" includes includes any child:
* * *
 (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship[.]
[2] R.C. 2151.031(C) states:
 As used in this chapter, an "abused child" includes any child who:
* * *
 (C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.
R.C. 2151.04(D) states:
 As used in this chapter, "dependent child" includes any child:
* * *
(D) To whom both of the following apply:
 (1) He is residing in a household in which a parent, guardian, custodian, or other member of the household has abused or neglected a sibling of the child;
 (2) Because of the circumstances surrounding the abuse or neglect of the sibling and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.
[3] R.C. 2151.412(G)(1) states:
 In the agency's development of a case plan and the court's review of the case plan, the agency and the court shall be guided by the following general priorities:
 (1) A child who is residing with or can be placed with his parents within a reasonable time should remain in their legal custody even if an order of protective supervision is required for a reasonable period of time[.]