OPINION
Appellants, Ronald Bowman ("Ronald") and Patricia Noe ("Patricia"), appeal an order of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of their daughter to the Butler County Children Services Board ("BCCSB").
On March 5, 1995, Patricia gave birth to a daughter, Amanda Noe ("Amanda").[1] At the time of Amanda's birth, Patricia was incarcerated at the Ohio Reformatory for Women in Marysville, Ohio.[2] On March 7, 1995, BCCSB filed a dependency complaint on behalf of Amanda and Amanda was removed from Patricia's care while still in the hospital following birth.
Initially, Patricia alleged that Amanda's father was either Ronald Maidon or Charles Witt. However, both Maidon and Witt were subsequently excluded as potential fathers of Amanda.[3]
Patricia later alleged Ronald Bowman to be Amanda's father and subsequent paternity testing revealed that he is, in fact, Amanda's biological father. Ronald has a history of incarceration and was incarcerated during various stages of the proceedings below.[4]
A hearing was scheduled for September 11, 1996. On September 10, 1996, Ronald's counsel filed a motion for a continuance which stated that counsel was appointed on September 9, 1996 and required additional time to investigate the case and prepare for the permanent custody hearing.[5] The juvenile court conducted the hearing on September 11, 1996, as Patricia had been transported from prison and Ronald had been transported from jail to be present, but continued the hearing until October 1, 1996 to provide Ronald an opportunity to present further evidence on his behalf. On September 11, 1996, the juvenile court also found Ronald to be Amanda's biological father.
Following the September 11 and October 1, 1996 hearings, the juvenile court found that Amanda could not be placed with either parent within a reasonable time and should not be placed with either parent, and that it was in Amanda's best interest for permanent custody to be awarded to BCCSB. The court also terminated the parental rights of both Ronald and Patricia. A permanent custody final judgment entry was filed on October 18, 1996. It is from this judgment that Ronald and Patricia separately appeal.
Ronald sets forth the following assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION FOR CONTINUANCE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION FOR CONTINUANCE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DIVESTING PERMANENT CUSTODY OF THE CHILD IN THE ABSENCE OF GOOD FAITH EFFORTS BY BUTLER COUNTY CHILDREN SERVICES BOARD TO REUNIFY THE CHILD WITH APPELLANT.
Assignment of Error No. 4:
 THE JUDGMENT OF THE TRIAL COURT COMMITTING PERMANENT CUSTODY OF THE CHILD TO BUTLER COUNTY CHILDREN SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In her separate appeal, Patricia raises the following assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS AWARDING OF PERMANENT CUSTODY TO THE BUTLER COUNTY CHILDREN'S SERVICES BOARD IN THE ABSENCE OF GOOD FAITH EFFORTS BY THE BUTLER COUNTY CHILDREN'S SERVICES BOARD TO REUNIFY APPELLANT AND THE MINOR CHILD.
Assignment of Error No. 2:
 THE JUDGMENT OF THE TRIAL COURT IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILD TO BUTLER COUNTY CHILDREN'S SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE BEST INTERESTS OF SAID MINOR CHILD.
In his first and second assignments of error, Ronald contends that the juvenile court erred by overruling his motion for a continuance. Ronald argues that because the proceedings were not continued, his constitutional rights to effective assistance of counsel and due process were violated, as counsel was not afforded a reasonable opportunity to investigate and prepare a defense to BCCSB's motion to permanently terminate his parental rights.
In permanent custody proceedings involving an involuntary termination of parental rights, parents are entitled to the effective assistance of counsel. Jones v. Lucas Cty. Children Services Bd. (1988), 46 Ohio App.3d 85, 86. An appellate court's standard of review when reviewing an ineffective assistance of counsel claim is the same as that afforded a defendant in a criminal case:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id. at 86-87, quoting Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064; In re Travis Children (1992),80 Ohio App.3d 620, 625. In demonstrating prejudice to the defense, an appellant "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
The relationship between a parent and child is a constitutionally protected liberty interest. Quilloin v. Walcott (1978),434 U.S. 246, 255, 98 S.Ct. 549, 554. Thus, when a state seeks to terminate the parent-child relationship, the proceedings "must be accomplished by procedures meeting the requisites of the Due Process Clause." Lehr v. Robertson (1983), 463 U.S. 248, 258,103 S.Ct. 2985, 2991, quoting Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 1394. "The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge (1976),424 U.S. 319, 333, 96 S.Ct. 893, 902.
In this case, Ronald does not argue that counsel's performance was deficient. Rather, Ronald contends that the juvenile court's failure to grant a continuance rendered counsel's assistance ineffective and violated his due process rights because counsel did not have adequate time to prepare for trial. The decision whether to grant or deny a motion for a continuance rests within the sound discretion of the trial court. Sayre v. Hoelzle-Sayre (1994), 100 Ohio App.3d 203, 208. Absent an abuse of discretion, the trial court's decision with respect to a motion for a continuance will not be disturbed on appeal. Id. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
Our review of the record indicates that although the juvenile court allowed the hearing to proceed on September 11, 1996 by permitting the state to present its case-in-chief, the court at least partially granted Ronald's motion for a continuance by continuing the proceedings until October 1, 1996 so that Ronald could have additional time to prepare his case and secure the attendance of any witnesses on his behalf. In fact, Ronald and his attorney indicated on the record that the additional time afforded them by the juvenile court would be sufficient for them to prepare their case:
 MR. HEDRIC [Ronald's attorney]: Mr. Bowman indicates that his mother would need at least a week's notice so she can schedule off from work. Is that correct Ronald?
MR. BOWMAN: At least a week.
 MR. HEDRIC: Yeah. So if we get within two weeks, that should be sufficient Your Honor. We appreciate the Court's consideration.
In addition, following the October 1, 1996 hearing at which Ronald presented his own testimony and testimony from his mother, Ronald and his counsel made the following statements on the record:
 MR. HEDRIC: No Your Honor. We have no other witnesses. I . . . for the record, I spoke with Ronald last time and also this morning. I went over to the jail, and I'm not aware of any other witnesses I could have called on his behalf. Is that correct Ronald?
MR. BOWMAN: Right.
 MR. HEDRIC: And for the record, I don't think it picked up, but he agreed with that assessment. So we would have nothing else. We'd rest.
After carefully reviewing the record, we find that Ronald was not denied the effective assistance of counsel and that his due process rights were not violated when the juvenile court decided to proceed with the hearing scheduled for September 11, 1996 and continue the matter until October 1, 1996. See Sayre,100 Ohio App.3d at 208. By continuing the September 11, 1996 hearing until October 1, 1996, the juvenile court allowed Ronald a reasonable amount of time to prepare his case in defense to the case-in-chief presented by the state and to secure witnesses on his own behalf. Furthermore, Ronald has not stated whom he would have called as additional witnesses, what their testimony would have been, or why the available time was insufficient, and thus has demonstrated no prejudice. Accordingly, we find no abuse of discretion by the juvenile court in conducting the proceedings in the matter in which it did. See Sayre, 100 Ohio App.3d at 208. Ronald's first and second assignments of error are overruled.
In his third assignment of error, Ronald contends that the trial court erred by granting permanent custody of Amanda to BCCSB in the absence of credible evidence indicating good faith efforts by BCCSB to reunify Amanda with him. In her first assignment of error, Patricia contends that the trial court erred by awarding permanent custody of Amanda to BCCSB in the absence of evidence demonstrating good faith efforts by BCCSB to reunify her with Amanda.
R.C. 2151.353(A)(4) provides that a juvenile court may grant permanent custody of a child to a county children services agency where the child has been adjudicated dependent. Pursuant to R.C.2151.414(A), a juvenile court need not find that the agency seeking permanent custody of a child has made good faith efforts to implement a reunification plan for the child and his or her parents. In the Matter of: Warren Lacy (July 18, 1994), Butler App. No. CA93-06-101, unreported.[6] The appropriate inquiry is whether the agency "made reasonable efforts to implement its reunification plan." Id. at 10. However, the juvenile court "shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan." R.C. 2151.414(C). In addition, a reunification plan is not required where it would be futile to implement one. Elmer v. Lucas Cty. Children Services Bd. (1987),36 Ohio App.3d 241, 244; In re Smart (1984), 21 Ohio App.3d 31,35; In the Matter of: Kayla Puckett (Aug. 15, 1994), Butler App. No. CA94-01-001, unreported.
The record indicates that both Ronald and Patricia have been repeatedly incarcerated throughout their adult lives. As a result of their incarceration, neither parent has been able to maintain adequate housing or stable employment in order to provide care and support for Amanda. Furthermore, following Amanda's birth, neither parent has been able to develop and nurture a relationship with her due to incarceration. In addition, neither parent has been in a position to participate in any services which may have been offered by BCCSB as a result of their respective imprisonments.
Based upon a thorough review of the record, we find no error by the juvenile court in granting permanent custody of Amanda to BCCSB and terminating the parental rights of Ronald and Patricia. It was not necessary for the juvenile court to find that BCCSB had made a good faith effort to implement a reunification plan and there is no evidence that a reunification plan with Ronald or Patricia would have been anything other than futile under the circumstances of this case. See R.C. 2151.414(A); Elmer,36 Ohio App.3d at 244; Smart, 21 Ohio App.3d at 35. Accordingly, Ronald's third assignment of error and Patricia's first assignment of error are overruled.
In his fourth assignment of error, Ronald contends that the juvenile court's judgment awarding permanent custody of Amanda to BCCSB was against the manifest weight of the evidence. Ronald argues that all relevant factors, including his "nonviolent drugfree criminal record" and desire to seek parenting services and full time employment, indicate that temporary placement with his mother would be in Amanda's best interest. In her second assignment of error, Patricia contends that the trial court's judgment granting permanent custody of Amanda to BCCSB was against the manifest weight of the evidence and not in Amanda's best interest.
When competent, credible evidence exists which supports factual findings by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280. Likewise, within the context of an award of permanent custody of a minor child to a county children services board, the juvenile court's finding will not be disturbed on appeal as being against the manifest weight of the evidence when supported by credible evidence. In re Lay (1987), 43 Ohio App.3d 78,80; In re Hederson (1986), 30 Ohio App.3d 187, 190.
According to R.C. 2151.414(B), permanent custody may be granted to a movant if the juvenile court determines by clear and convincing evidence that permanent custody is in the best interest of the child and any one of the factors listed in R.C.2151.414(B)(1)-(3) apply. Puckett, Butler App. No. CA94-01-001, unreported; In re: Krista House (Feb. 24, 1992), Butler App. Nos. CA91-01-016, CA91-02-022, unreported. For purposes of this appeal, the relevant factor contained in R.C. 2151.414(B) is found in section (B)(1), which provides that "[t]he child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
In determining whether a child can be returned to a parent within a reasonable period of time, the court must consider all relevant facts, including the factors specifically enumerated in R.C. 2151.414(E). One factor listed in R.C. 2151.414(E) and pertinent to this case, which requires the court to find that "the child cannot be placed with either parent within a reasonable time or should not be placed with either parent," is found in R.C. 2151.414(E)(8), which states that "[t]he parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child."
"Permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist." In re William S. (1996), 75 Ohio St.3d 95, syllabus;[7] In re Weaver (1992),79 Ohio App.3d 59, 64. Clear and convincing evidence is that degree of proof which will create in the mind of the trier of fact a firm belief as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368; Weaver,79 Ohio App.3d at 64.
When making the best interest determination, the trial court must consider all relevant factors, including the factors specifically identified in R.C. 2151.414(D)(1)-(4). R.C.2151.414(D) provides that relevant factors which should be considered include the child's interaction with parents, foster parents, and significant others, the child's custodial history, and the child's need for a legally secure placement and whether such placement can be achieved without a grant of permanent custody to the agency.
Ronald testified that he would like the juvenile court to award temporary custody of Amanda to his mother. Ronald stated that he would like to be Amanda's primary caregiver, but if he cannot be, he would like his mother to become Amanda's legal guardian. Ronald stated that he has never contacted anyone in an attempt to see Amanda and has never asked the court for visitation privileges with Amanda. Ronald indicated that before he was legally named Amanda's father, he did not have a lot of contact with her because he was not aware that he had the right to see her. Ronald stated that there is no court order to support Amanda and that he has never supported her. Ronald stated that he saw Amanda once following the September 11, 1996 hearing. Ronald also stated that BCCSB has not offered him any services with the ultimate goal of reuniting him with Amanda.
Ronald testified that it is possible that he is the father of all four of Patricia's children. Ronald testified that he has been ordered to pay support for one of Patricia's children, but he has never paid support for that child because he has been incarcerated. Ronald stated that he does not visit his other children and cannot see them because their current custodian, Patricia's sister, will not allow him to visit them.
Ronald indicated that when he has not been incarcerated, he lived in an apartment for approximately one month and also lived with his mother at her residence. Ronald also stated that when he has not been incarcerated, he has been able to maintain steady employment at Western Building Materials and Canal Road Auto Salvage, a family business. Ronald stated that upon his release from jail, he will be residing with his mother for a while and intends to work at both Canal Road Auto Salvage part-time and Western Building Materials full-time, although he is unsure if his position at Western Building Materials will be available. Ronald testified that his past convictions would not alter his ability to be a good father to Amanda and that it has "probably [given him] some experience, you know that [he] can pass on to [his] children."
Patricia testified that she desires the juvenile court to place Amanda with Ronald's mother. Patricia testified that she currently resides at the Ohio Reformatory for Women. Patricia stated that she will go before the parole board in April 1997 and that will be her first potential opportunity to be released. Patricia stated that Amanda was born while she was in prison and that she has seen Amanda twice since birth. Patricia stated that due to her incarceration, she has not been able to provide any support for Amanda. Patricia testified that although her first three children are in the custody of her sister, her sister is not able to care for Amanda as well. Upon release from prison, Patricia indicated that she anticipates working at Hardee's restaurant, as her sister-in-law is a supervisor. Patricia stated that she will reside upon release with her sister.
Diane Schaiper, a foster care specialist employed by BCCSB, testified that she was involved with Amanda's case following Amanda's birth and that Amanda has continuously been in the care of BCCSB since birth. Schaiper stated that Amanda has been in the same foster home since birth and that Amanda is healthy and happy. Schaiper stated that while she was the case worker, she was not able to start any services for Patricia to help her reunify with Amanda other than limited visitation due to Patricia's incarceration. Schaiper testified that, at Patricia's request, she transported Amanda on at least two occasions to Marysville to visit Patricia in prison for approximately one hour visits.
Mary Larson, a case worker employed by BCCSB, testified that she received Amanda's case from Schaiper in 1995. Larson stated that Ronald was notified through mail of the test results indicating his paternity of Amanda. Larson stated that she also tried calling Ronald on the telephone but could not reach him. Larson stated that in November 1995, after she sent a letter to Ronald, Ronald contacted her and indicated that he wanted to be established as Amanda's father. Larson stated that she advised Ronald to contact the court for legal aid and that she has received no further communication from him since that time. According to Larson, Ronald never contacted her again to see Amanda or to inquire about her. Larson stated that she never offered Ronald parenting classes as a service during Amanda's case.
Larson stated that she has not taken Amanda for any visits to see Patricia in prison. Larson stated that after an October 1995 visit, Patricia only asked one other time for visitation with Amanda. Larson stated that she has had no other communications with Patricia while Patricia has been incarcerated and has not received any letters from Patricia.
Larson stated that BCCSB filed its motion for permanent custody of Amanda because she is now eighteen months old and has been in foster care since birth. Larson stated that Amanda is doing well in the foster home and is thriving, healthy, and bonding with her foster mother and father. Larson indicated that the foster parents love Amanda and want to adopt her. Larson stated that Patricia has been incarcerated since Amanda's birth and Ronald "has been in and out of prison practically all of his life." Larson testified that due to Ronald and Patricia's incarcerations, it was difficult to refer them to any services.
Hazel Bowman, Ronald's mother, testified that she believes she could adequately care for Amanda and that it is her desire for Amanda to be placed in her care and custody. Bowman stated that she is employed as a registered nurse at the Veterans Administration Hospital and is financially able to care for Amanda. Bowman stated that she has room for Amanda, although Amanda would not have her own room. Bowman testified that she has not had any contact with Amanda in the past because she "really didn't know that she was [Ronald's] child." Bowman stated that she first discovered that Ronald may be Amanda's father in September 1995, but just recently found out that Amanda was legally her granddaughter. Bowman stated that Ronald did indicate that Amanda could be his child in March 1995, after her birth. Bowman testified that since Ronald mentioned to her that she might be a grandmother, she has never called BCCSB to ask to see Amanda. Bowman stated that she believes Ronald has other children by Patricia, but she is not involved with those children in any way.
Bowman stated that she has four children, three sons and one fifteen-year-old daughter. Bowman testified that two of her sons, Ronald and Clarence, have been in the custody of BCCSB in the past and that she worked with BCCSB from approximately 1977 to the mid-1980's. Bowman indicated that her sons have been in juvenile court for various offenses and that one son was committed to Columbus Department of Youth Services for crimes he committed as a juvenile. Bowman stated that all three of her sons have been incarcerated as adults. Bowman stated that if she had custody of Amanda, Amanda would be exposed to all of her children to a certain extent, since her daughter presently lives with her and her sons come over to her home "probably a couple times a week."
Cathy Shackelford, chief case work supervisor employed by BCCSB, testified that Bowman first became involved with BCCSB in 1977 because of issues of neglect and lack of supervision with all three of her sons. Shackelford stated that BCCSB would have many concerns regarding Bowman's home as a placement for Amanda based upon Bowman's past involvement with BCCSB.
After carefully reviewing the record, we find that the juvenile court's decision awarding permanent custody of Amanda to BCCSB was not against the manifest weight of the evidence. See Seasons Coal, 10 Ohio St.3d at 80; Lay, 43 Ohio App.3d at 80. The clear and convincing evidence presented at trial establishes that permanent custody is in Amanda's best interest. Ronald's fourth assignment of error and Patricia's second assignment of error are overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] The record indicates that Amanda is Patricia's fourth child. Patricia's first three children are in the custody of Patricia's sister, Kimberly Noe.
[2] The record indicates that on June 23, 1989, a judgment entry of conviction was filed indicating that Patricia was convicted of complicity to robbery and sentenced to be imprisoned for three to fifteen years. The record also indicates that on September 25, 1994, a judgment of conviction entry was filed indicating that Patricia was convicted of escape and sentenced to a one year term of imprisonment.
[3] Maidon was excluded as Amanda's biological father by DNA testing. Witt was excluded as Amanda's biological father after he failed to appear for blood testing and Patricia later stated that she never had sexual relations with him.
[4] The record indicates that on April 13, 1989, a judgment of conviction entry was filed which indicates that Ronald was convicted of breaking and entering and petty theft and sentenced to be imprisoned for one year. On January 9, 1990, a judgment entry of conviction was filed which indicates that Ronald was convicted of two counts of petty theft and breaking and entering and sentenced to a term of imprisonment of one year. On January 28, 1992, a judgment entry of conviction was filed which indicates that Ronald was convicted of receiving stolen property and sentenced to be imprisoned for one year. On April 4, 1995, a judgment of conviction entry was filed which indicates that Ronald was convicted of receiving stolen property — prior and sentenced to a term of imprisonment of one and one-half years. On August 9, 1996, a judgment of conviction entry was filed indicating that Ronald was convicted of attempted receiving stolen property, disorderly conduct, and resisting arrest and sentenced to be imprisoned for six months, thirty days, and ninety days respectively, to run concurrently with one another.
[5] Apparently, counsel had been appointed for Ronald prior to September 9, 1996, but was determined to be ineligible due to a conflict of interest.
[6] In Lacy, this court determined that because R.C. 2151.414(A) had been revised such that the language mandating a good faith effort at reunification was eliminated, the good faith inquiry was no longer required.
[7] We note that following the William S. decision, R.C.2151.414(E) was amended and now contains twelve, instead of eight, enumerated factors for the court to consider.