DECISION AND JUDGMENT ENTRY
Jamie Lee Norton appeals the termination of her parental rights and the grant of permanent custody of her children to Adams County Children's Services ("ACCS"). She assigns the following two errors:
 THE JUDGMENT GRANTING PERMANENT CUSTODY OF BRANDON VAUGHN AND JESSICA VAUGHN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 THE TRIAL COURT ERRED WHEN IT PERMITTED ISSUES FROM THE PREVIOUS PERMANENT CUSTODY HEARING OF JANUARY 20, 2000, TO BE RELITIGATED AT THE HEARING BELOW ON THE APRIL 5, 2000 MOTION FOR PERMANENT CUSTODY.
Finding no merit in either assigned error, we affirm the judgment of the trial court.
Brandon (D.O.B. 11/6/92) and Jessica (D.O.B. 1/11/95) were born to Jamie Lee Norton and Ernie Vaughn. The children have a history of involvement with ACCS since April 1996 and have been in the custody of ACCS since July 1998.
On July 6, 1998, Ms. Norton was arrested and the children were taken into ACCS's custody because they had nowhere else to stay. Ms. Norton was released the following day but the children were not returned to her because she did not have an adequate home for herself or the children. Sometime shortly after her release, Ms. Norton moved from Adams County to adjacent Brown County.
On September 4, 1998, Ms. Norton admitted that the children were dependent and the magistrate ordered the children returned to her after a home study. Following this order, Ms. Norton apparently moved from Brown County to Clermont County and then back to Brown County. During this period, Ms. Norton also was found guilty of felony breaking and entering and theft. She served thirty days in jail and is still on probation for these offenses. In January 1999, a home study of Ms. Norton's residence did not recommend returning the children to her.
Ms. Norton exercised visitation with the children until February 27, 1999. From February 27, 1999 to April 29, 1999, Ms. Norton did not contact ACCS. On April 30, 1999, Ms. Norton notified ACCS that she was living in Columbus and reported her new address. Ms. Norton contacted ACCS in May 1999 and June 1999. In June 1999, ACCS suspended Ms. Norton's visitation rights pending a court hearing.
On July 19, 1999, Ms. Norton advised ACCS that she was living in Portsmouth, which is located in Scioto County. On August 12, 1999, Ms. Norton began regularly visiting her children again. A home study of Ms. Norton's new home by Scioto County Children's Services did not recommend placement of the children in the home. Ms. Norton moved once again, this time to West Portsmouth and a home study of this residence was conducted. Apparently, the residence itself was acceptable but ACCS opposed returning the children to Ms. Norton for other reasons.
ACCS filed a motion for permanent custody and the court conducted a hearing in January 2000. After hearing ACCS's evidence, the court found that there was insufficient evidence to show that permanent custody was in the children's best interests and denied ACCS's motion. The court ordered that ACCS begin the process of returning custody to Ms. Norton and transfer the case to Scioto County Children's Services ("SCCS").
In February 2000, Ms. Norton, along with her live-in boyfriend, Johnny Clark, was arrested for burglary. Ms. Norton eventually pled guilty to two misdemeanors, attempted breaking and entering and theft. She was sentenced to six months incarceration in the Adams County Jail and was scheduled for release in August 2000. However, Ms. Norton and Mr. Clark also had arrest warrants pending in both Brown and Franklin Counties for traffic citations.
At the time of Ms. Norton's arrest and conviction, ACCS had not yet transferred the children's case to SCCS or returned the children to their mother. Therefore, the court granted ACCS's subsequent motion to retain the children's cases, rather than transferring them. In April 2000, ACCS also filed a second motion for permanent custody. The court conducted a hearing in June 2000 and awarded permanent custody of the children to ACCS. Ms. Norton filed a timely appeal from this entry.
In her first assignment of error, Ms. Norton argues that the court's decision to grant permanent custody of the children to ACCS is against the manifest weight of the evidence. We disagree.
A parent's right to raise his or her children is an "essential" and "basic civil right." In re Murray (1990), 52 Ohio St.3d 155, citingStanley v. Illinois (1972), 405 U.S. 645, 651, 31 L.Ed.2d 551,92 S.Ct. 1208. Moreover, parents have a "fundamental liberty interest" in the care, custody and management of the child. In re Murray, citing Santoskyv. Kramer (1982), 455 U.S. 745, 753, 71 L.Ed.2d 599, 102 S.Ct. 1388. However, the rights and interests of natural parents are not absolute.
R.C. 2151.413 permits a public children services agency to file a motion requesting permanent custody of a child:
 (A) A public children services agency * * * that * * * is granted temporary custody of a child * * * who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child.
R.C. 2151.414(B) provides that a court may grant a motion for permanent custody if the court determines, by clear and convincing evidence, that: (1) permanent custody is in the best interest of the child; and (2) the child cannot be placed with either of his parents within a reasonable period of time or the child should not be placed with his parents. The "best interest" determination and the "cannot be placed with either parent" determination focus on the child, not the parent. R.C. 2151.414(C) prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents. In Inre William S. (1996), 75 Ohio St.3d 95, 97, the Court wrote:
 Initially, we note that in interpreting the statutory provisions pertaining to juvenile court, we must carry out the purposes of the statute as stated in R.C. 2151.01:
 The sections in Chapter 2151. of the Revised Code * * * shall be liberally interpreted and construed so as to effectuate the following purposes:
 To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code;
(B) * * *
 (C) To achieve the foregoing purposes, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety * * *.
When making the best interest determination, courts must consider all relevant factors. R.C. 2151.414(D) provides that relevant factors include the child's probability of adoption and whether adoptive placement would benefit the child, the child's interaction with family members and others, the child's custodial history, and the child's need for a legally secure permanent placement.
When making the determination of whether the child cannot be placed with either of his parents within a reasonable period of time, a court must likewise consider all relevant evidence. If the parents have failed "continuously and repeatedly" to substantially remedy the conditions which led to the temporary custody order, R.C. 2151.414(E)(1) requires the court to find that "the child cannot be placed with his parents within a reasonable time." That subsection requires that courts consider the parents' utilization of social and rehabilitative services that were made available to them. If the parents have demonstrated a lack of commitment toward the child, R.C. 2151.414(E)(4) also requires the court to find that "the child cannot be placed with his parents within a reasonable time." R.C. 2151.414(E)(3) requires the same finding if the court determines that the parent abused or neglected the child between the filing of the original complaint and the filing of the permanent custody motion.
In In re Butcher (Apr. 10, 1991), Athens App. No. 1470, unreported, we noted that R.C. 2151.414 does not require that each and every condition listed in subsection (E) exist before the court may terminate parental rights. The trial court may make its decision based solely on the existence of one of the conditions.
In a permanent custody proceeding, trial courts must use the "clear and convincing evidence" standard of proof. See R.C. 2151.414. Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. In State v.Schiebel (1990), 55 Ohio St.3d 71, 74, the Court wrote that the standard of "clear and convincing evidence" is defined as:
 * * * that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
An appellate court should not substitute its judgment for that of the trial court when competent and credible evidence going to all the essential elements of the case exists. Id.; In re Kincaid (Oct. 27, 2000), Lawrence App. No. 00CA3, unreported. This standard of review is used by appellate courts in reviewing awards of permanent custody of children to children services agencies. See Jones v. Lucas CountyChildren Services Board (1988), 46 Ohio App.3d 85, 86; In re Lay (1987),43 Ohio App.3d 78, 80; In re Wright (Oct. 4, 1990), Washington App. No. 90CA10, unreported. In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, the court reviewed the principle that reviewing courts may not re-weigh the evidence, but must affirm judgments supported by competent, credible evidence:
 The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.
See, also, C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d, and In re Butcher, supra.
Turning to the case at hand, we find ample competent, credible evidence to support the trial court's conclusion that the children cannot be placed with either parent within a reasonable period of time and that a permanent custody award to ACCS is in the children's best interests. The evidence adduced at the hearing shows that Ms. Norton was constantly moving, having stayed at no address longer than four months. This constant moving likely made it difficult for ACCS to keep track of Ms. Norton much less provide services to her.
The testimony of Sonya Evans, a case supervisor at ACCS, indicates that the agency developed several case plans with the goal of reuniting Ms. Norton and her children. In order to accomplish reunification, Ms. Norton was to visit with her children on a consistent basis, establish a safe and stable home for herself and her children, obtain her general equivalency diploma (GED), attend parenting classes and counseling, and obtain a driver's license so she could transport the children to appointments. ACCS provided the children with a foster home, arranged counseling for the children, and arranged visitation for the children and Ms. Norton. ACCS submits that Ms. Norton did not comply with the case plan in that she did not obtain her GED, did not visit with the children on a consistent basis, did not provide a safe and stable environment for the children to live in, did not attend counseling and did not obtain her driver's license.
During her testimony, Ms. Norton indicated that she could not afford counseling and notified ACCS that she needed assistance in paying for it. However, according to Ms. Evans, Ms. Norton indicated to the agency that she did not feel that she needed counseling and refused to attend. Ms. Evans conceded that the agency records indicate that Ms. Norton completed parenting classes. Ms. Norton testified that she was attending GED classes but did not complete them or take the test due to her February 2000 arrest and subsequent incarceration. The agency contends that Ms. Norton failed to provide a stable home for the children as she was living with Johnny Clark, who had a criminal record; did not have a job or any means of sustaining herself other than Mr. Clark; had a history of living with men who abused her; and was constantly moving.
While the agency doubtlessly could have done more, we believe that it made sufficient efforts to assist Ms. Norton in remedying the problems that caused the removal of the children. However, due to Ms. Norton's repeated moves and poor choices in partners, the agency's efforts failed. Therefore, there is sufficient competent, credible evidence to support the court's finding that R.C. 2151.414(E)(1) was present.
Further, the court found that R.C. 2151.414(E)(3) and (4) were present here. Neither of these factors require a case plan nor time to remedy the situation. Under (E)(3), the court must find that a child cannot or should not be placed with his parents within a reasonable time period if the child has been neglected or abused; under (E)(4), the court must make the same finding if the parent has demonstrated a lack of commitment toward the child by failing to regularly visit or communicate with the child when able to do so or by other actions showing an unwillingness to provide an adequate permanent home for the child.
The court found that Ms. Norton failed to visit her children between February 27 and August 12, 1999. Further, between February 27 and April 20, ACCS did not even know Ms. Norton's whereabouts. Ms. Norton continuously moved to various counties throughout Ohio and committed various crimes resulting in her incarceration. These poor decisions indicate an unwillingness to provide an adequate permanent home for children. The facts support the trial court's finding that R.C.2151.414(E)(3) and (4) are present here.
In view of the foregoing, it is apparent that the children cannot be placed with Ms. Norton within a reasonable period of time.
The court also found that it was in the best interests of the children for permanent custody to be granted to ACCS. The court found that based on the children's past custodial history of foster care and their need for a legally secure placement, permanent custody should be granted to ACCS. This finding is likewise supported by competent, credible evidence.
Ms. Norton argues that the court erred in relying upon prior stipulations between her and ACCS, i.e. those which occurred at the time of the first permanent custody hearing. She submits that these stipulations could not be relied on at the second hearing absent a new agreement. Again, we disagree.
Courts cannot take judicial knowledge of their own completed proceedings after they have been terminated. However, they may take judicial notice of facts previously determined in an ongoing matter.Burke v. McKee (1928), 30 Ohio App. 236, 238; Diversified Mtg. Investorsv. Bd. of Revision (1982), 7 Ohio App.3d 157, 159. It is clear from the record that the court did not conclude this case after the first hearing where Ms. Norton agreed that certain facts were true. There is no reason why these facts would be true at the time of the first hearing but untrue five months later. Therefore, the court did not err in continuing to accept these stipulations as truth at the later hearing in the same case.
Thus, we find that the trial court's judgment awarding ACCS permanent custody of the children is not against the weight of the evidence. Clear and convincing evidence supports the conclusion that permanent custody is in the children's best interest and that the children cannot be placed with Ms. Norton within a reasonable time or should not be placed with her. Ms. Norton's first assignment of error is overruled.
In her second assignment of error, Ms. Norton argues that the court erred in allowing issues from the first permanent custody hearing held in January 2000 to be resubmitted at the second custody hearing in June 2000. Ms. Norton contends that the second action was barred by the doctrine of res judicata and ACCS could not file a second motion for permanent custody based on the same facts as the first with the only addition being Ms. Norton's February arrest.
Under the doctrine of res judicata, a matter adjudged is taken for truth and a judgment rendered without fraud or collusion by a court of competent jurisdiction is conclusive of the rights, questions, and facts in issue, as to the parties or their privies in any subsequent action.Norwood v. McDonald (1943), 142 Ohio St. 299, paragraph one of the syllabus. Normally, a party cannot relitigate a matter based upon the same factual contentions after receiving an unfavorable judgment. However, unlike other types of actions, permanent custody actions require the court to look at the past, present and future in determining the child's best interests and whether the child can be placed with a parent or will be able to be placed with a parent within a reasonable time period. Other types of actions require the court to only look at past actions and how they affect the parties' legal rights; therefore, once the court makes a decision as to the existing facts, the outcome cannot change.
In In re McDaniel (Feb. 11, 1993), Adams App. No. 92CA539, unreported, we held that if the court decides not to grant a motion for permanent custody, the matter remains under the auspices of R.C. 2151.415. Under R.C. 2151.353(A)(1) through (6), a children services agency that has been given temporary custody of a child pursuant to R.C. 2151.415 can request that the juvenile court make one of five other dispositional orders. These other alternatives include: (1) placing the child in protective supervision, (2) granting temporary custody to a public children services agency, (3) awarding legal custody to either parent or another person who requests legal custody, (4) * * * (5) placing the child in long-term foster care with a public children services agency, or (6) ordering the removal from the home of the parent or other person who abused the child or caused or allowed the child to be neglected. The juvenile court retains jurisdiction over any child for whom it issues a dispositional order under R.C. 2151.353(A) until the child attains the age of eighteen or the child is adopted and a final decree of adoption is issued. R.C.2151.353(E)(1). Furthermore, the children services agency may at any time request that the juvenile court modify or terminate a dispositional order issued pursuant to R.C. 2151.353(A). See R.C. 2151.353(E)(2). Continuing jurisdiction to review dispositional orders is also provided to the juvenile court under R.C. 2151.417(A), which states that:
 Any court that issues a dispositional order pursuant to section 2151.353 * * * of the Revised Code may review at any time the child's placement or custody arrangement, the case plan prepared for the child * * * and any other aspects of the child's placement or custody arrangement. In conducting the review, the court shall determine * * * the appropriateness of continuing the child's placement or custody arrangement, and whether any changes should be made with respect to the child's placement or custody arrangement
* * *. (Emphasis added.)
Therefore, we agree with the Twelfth District Court of Appeals holding that, "Inasmuch as the juvenile court is vested with continuing jurisdiction to review and, if necessary, modify its dispositional orders, we conclude that res judicata does not prohibit the litigation of issues relevant to a motion for permanent custody even though the same or similar issues may have been considered in a prior action falling within the purview of R.C. Chapter 2151." In re Burkhart (Aug. 19, 1991), Butler App. No. CA90-07-146, unreported.
Furthermore, under R.C. 2151.414 (D) and (E), the court is required to look at all relevant evidence in determining whether permanent custody is in the children's best interests and whether the children cannot be placed with their parents within a reasonable time period or should not be placed with their parents. To further the interests of the children, the court must consider any evidence available to it, including a parent's pattern of conduct. Some of the most reliable evidence for the court to consider is the past history of the children and the parents.
Ms. Norton's argument that nothing has changed since the first hearing except her arrest is preposterous. Prior to her arrest, Ms. Norton was living with Johnny Clark in Scioto County. Mr. Clark was financially supporting Ms. Norton, who was not working. At the hearing, Ms. Norton testified that she no longer has contact with Mr. Clark and will not be reuniting with him upon her release from prison. Rather, she claims that she will be living with her mother until she can get "back on her feet" and will work for her mother's employer.
Clearly, many things will have changed when Ms. Norton is released from jail. First, she will not have seen her children for at least six months during her incarceration. Second, she will no longer have the same home or financial support that she had at the first permanent custody hearing. Third, she claims she will have a job though she also testified that she tried working while living in Columbus but was fired because of health problems which she apparently still has. Additionally, there is no evidence that Ms. Norton's mother is now willing and able to assist her daughter and her grandchildren other than Ms. Norton's testimony.
In sum, the evidence shows that Ms. Norton had over one and a half years to assume the lifestyle she claims she will be able to achieve after her release. Only through examining her past history would the court be able to determine the likelihood of such an occurrence. Thus, courts must be able to consider all relevant evidence in determining a child's future.
We find that the court did not err in permitting issues raised at the prior hearing to be introduced. Ms. Norton's second assignment of error is overruled.
Having found no merit in either assigned error, we affirm the trial court's judgment granting permanent custody of Brandon and Jessica Vaughn to ACCS and terminating Ms. Norton's parental rights.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Evans, J.: Concur in Judgment and Opinion
 _______________________ William H. Harsha, Judge