OPINION
{¶ 1} This is an appeal from the judgment of the Allen County Court of Common Pleas, Juvenile Division granting permanent custody of the minor child Asia Willis to Appellee Allen County Children's Services Board. Appellant is the child's father, Michael Willis. The child's mother, Angela Gordon, is not a party to this appeal.
 {¶ 2} The record presents the following facts. Asia Willis was born on November 3, 2000 to Angela Gordon and Appellant Michael Willis. Soon after her birth, Asia tested positive for cocaine exposure. Consequently, the Allen County Children's Services Board (Agency) took Asia into emergency custody by court order on November 9, 2000 and immediately placed her into foster care. On January 10th, 2001 the Allen County Common Pleas Court, Juvenile Division adjudicated Asia an abused child. Thereafter, the court held a dispositional hearing at which time Angela Gordon and Michael Willis stipulated to the Agency's temporary custody of Asia. The trial court entered judgment accordingly on February 5, 2001.
 {¶ 3} Meanwhile, pursuant to statutory mandate, the Agency developed a case plan designed to reunite Asia with her parents by addressing the reasons for her removal. On December 5, 2000, Michael Willis, Angela Gordon, Richard Reese (Asia's court appointed guardian ad litem) and caseworkers Lorrie Wilson and Michelle Vorhees signed the case plan. The case plan identified three concerns: (1) Age of child and ability to protect self; (2) Substance abuse issues with parents (3) History of abuse and neglect as a child (mother). In order to adequately address and remedy these concerns, the case plan instructed Asia's parents to attend parenting classes, complete a drug assessment, and follow all recommendations from the assessment. Furthermore, the mother was ordered to have a counselor assess her status as a former abused and neglected child. For its part in the case plan, the Agency was to make all the necessary referrals, provide case management and general counseling, make announced and unannounced home visits and keep contact with service providers. In addition to these objectives, the case plan set up supervised visitations in which Angela and Mike could spend one hour with Asia two times a week. Notably, in the context of addressing the appropriateness of Asia's placement in foster care, the case plan indicated that relative placement was not available.
 {¶ 4} On June 1, 2001, four months after being awarded temporary custody by stipulation, the Agency filed a motion for permanent custody of Asia, stating as grounds Michael and Angela's failure to remedy the problems that initially caused Asia to be placed outside the home. On January 22, 2002, the trial court held a hearing on the Agency's motion. Appellant, who was at that time serving a one-year prison term for an aggravated assault conviction in an unrelated matter, appeared at the hearing to contest the Agency's motion. Angela Gordon was not present at the hearing but was represented by a court appointed attorney. Appellant told the court that he had not seen or heard from Angela since June 2001. After hearing the testimony of four Agency employees and Appellant Michael Willis, the trial court granted permanent custody of Asia to the Agency based on a finding that the Agency had made reasonable efforts to make it possible for Angela to be returned to a parent. It is from this order that Appellant now appeals.
 {¶ 5} Appellant raises the following assignments of error:
 {¶ 6} The trial court erred in granting permanent custody to Allen County Children Services Board as the determination of the court was not supported by clear and convincing evidence and therefore is arbitrary and constitutes an abuse of discretion.
 {¶ 7} Allen County Children Services Board failed its duty to use reasonable case planning and diligent efforts at reunification with the parent.
 {¶ 8} Appellant asserts two assignments of error alleging that his parental rights were improperly terminated. Appellant's second assignment of error is an issue essential to the consideration of his first; therefore we address the assignments together. Upon review of the facts and law and in light of the most serious nature of these proceedings, this court finds that the trial court abused its discretion by arbitrarily terminating Appellant's parental rights where statutorily mandated findings were not supported by clear and convincing evidence.
 {¶ 9} Initially, we emphasize the seriousness of the matter at hand. It is a firmly established principal of law that a parent has a fundamental right to care for and have custody of his or her child. In reShaeffer Children (1993), 85 Ohio App.3d 683, 621 N.E.2d 426; citingSantosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388. This fundamental right is not lost based on a parent's temporary loss of custody. Id at 751-755. Indeed, the United States Supreme Court has stated, "It is cardinal with us that the custody, care and nurture of the child reside first in the parents," Stanley v. Illinois (1972),405 U.S. 645, 651, 92 S.Ct. 1208, 1212-1213; citing Prince v.Massachusetts (1944), 321 U.S. 158, 166, 64 S.Ct. 438. Therefore, the termination of parental rights is an alternative of last resort; sanctioned only when the welfare of a child necessitates such action. SeeIn re Wise (1994), 96 Ohio App.3d 619; In re Cunningham (1979),59 Ohio St.2d 100.
 {¶ 10} Furthermore, "[p]ermanent termination of parental rights has been described as the `family law equivalent of the death penalty in a criminal case.' Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" (Citations omitted.) In reHayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, 682-683. Consequently, the right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit. Baker v. Baker (1996),113 Ohio App.3d 805; citing Quilloin v. Walcott (1978), 434 U.S. 246,98 S.Ct. 549.
 {¶ 11} The Ohio law codifies the concepts outlined above by requiring that before a juvenile court can terminate parental rights and award permanent custody of a child who is neither abandoned nor orphaned to an agency of the state, it must find by clear and convincing evidence find that, (1) the grant of permanent custody to the agency is in the best interest of the child, and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Because the trial court is in the best position to weigh witness credibility and to evaluate a child's needs, the standard for reviewing a trial court's grant of permanent custody is abuse of discretion. See In re T.C., 140 Ohio App.3d 409,2000-Ohio-1769, 747 N.E.2d 881. Thus, a trial court's judgment will not be disturbed unless it is deemed to be unreasonable, arbitrary or capricious. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} However, R.C. 2151.414(B) provides juvenile courts with a strict structural framework for making a termination decision. For instance, when considering a permanent custody case such as the one at bar, R.C. 2151.414(B) directs the juvenile court to make specific statutory findings pursuant to various considerations enumerated in R.C.2151.14(D) (E). In Re Rodgers (2000), 138 Ohio App.3d 510, 520. First, to determine the best interests of a child, R.C. 2151.14(D) directs the trial court to consider any relevant factors and:
 {¶ 13} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 14} (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 15} (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 16} (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 17} (5) Whether either parent has been convicted of an enumerated list of crimes against children. "
 {¶ 18} Next, to determine whether the child can be placed with the parents within a reasonable period of time, the statute directs the court to R.C. 2151.14(E), which states that the court shall consider all relevant evidence plus a list of sixteen factors. If the court determines, by clear and convincing evidence, that one or more of the listed factors exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C.2151.14(E). Clear and convincing evidence is that evidence which creates a firm belief as to the facts sought to be established. In re Rodgers
(2000), 138 Ohio App.3d 510, 519, citing Cross v. Ledford (1954),161 Ohio St. 469. If a trial court grants permanent custody to an agency where clear and convincing evidence does not support the statutory determinations, that judgment will be deemed an abuse of discretion. Inre Rogers, Marion App. Nos. 9-01-04 9-01-05, 2001-Ohio-2182.
 {¶ 19} In the matter at hand, the juvenile court entered the requisite statutory findings with respect to Asia's best interests and her inability to be placed with her parents within reasonable time. First, the court determined that the termination of Appellant's parental rights would be in Asia's best interest based on her need for permanent placement, the reasonable probability that she would be adopted, and further consideration of the factors enumerated in R.C. 2151.14(D). Thereafter, the trial court concluded that Asia could not be returned to her father within a reasonable period of time based on finding clear and convincing evidence to support the following R.C. 2151.14(E) factors[1]:
 {¶ 20} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 21} (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 22} (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."
 {¶ 23} We begin our review of these findings by registering serious doubt as to merits of the trial court's conclusion regarding Asia's best interests. Our doubts stem from the guardian ad litem's markedly cursory recommendation, the brief period of time following Asia's intake into the system and the Agency's motion for permanent custody and the overwhelming amount of testimony regarding the Appellant's positive relationship with Asia. Nevertheless, a trial court has great discretion to determine a child's best interest and thus we cannot conclude that that trial court abused its discretion to this end. Therefore, we shift our review to whether or not the record presents clear and convincing evidence to support the trial court's second required finding pursuant to the factors enumerated in R.C. 2151.14(E). To that question, as we will elaborate below, our answer is resoundingly in the negative.
 {¶ 24} The trial court's first finding pursuant to R.C.2151.14(E)(1), that Appellant continually and repeatedly failed to remedy the problems that caused Asia's removal despite the Agency's reasonable case planning and diligent efforts to assist him, is not supported by clear and convincing evidence in the record. On the contrary, the record reveals questionable diligence on the agency's behalf and further fails to establish how the Appellant could have remedied the condition that lead to Asia's removal.
 {¶ 25} The state acquired temporary custody of Asia because she was exposed to cocaine in utero. Prenatal illegal substance exposure of this nature is per se child abuse. In re Baby Boy Blackshear,90 Ohio St.3d 197, 200, 2000-Ohio-173 Ohio, 736 N.E.2d 462. However, the ingestion of harmful narcotics while pregnant is a mother's abuse. To punish the father without further evidence of his involvement is unjust. Here, the Agency's initial complaint alleging Asia's abuse, neglect and dependency accuses only Angela Gordon and does not mention any abuse on the part of Appellant. Furthermore, remarkably absent from the record is evidence or accusation that Appellant has ever used or been addicted to cocaine, the substance found in Asia's bloodstream.[2]
 {¶ 26} Despite the lack of evidence pertaining to Appellant's illegal drug use, the initial December 5, 1999 case plan required that Appellant undergo a drug assessment. The Agency based its petition for permanent custody largely on this the Appellant's failure to comply with this portion of the case plan. However, the record presents conflicting evidence on this issue. Caseworker Lorrie Wilson, the first caseworker involved in Asia's case, testified on direct that Appellant failed to complete a drug assessment at any point during the course of her involvement with the case. Thereafter, on cross examination, Wilson contradicted her prior testimony and admitted that she was aware that Appellant had gone to Mercy Hall and had undergone a drug assessment with a counselor. The record does not contain documentation of Wilson's conversations with the counselor, only Wilson's testimony that the drug counselor "felt she couldn't make a good professional judgment call." Appellant testified that he was under the impression that by going Mercy Hall and by further attending Narcotics Anonymous meetings with Angela Gordon, he had satisfied his drug assessment requirement. However, when caseworker Letetia Amerson took over Asia's case file from Wilson in April 2001, she was not made aware of Appellant's visit to Mercy Hall or his involvement with Narcotics Anonymous. Appellee elicited testimony from Amerson that Appellant "continued" to avoid an assessment during the two-month period between the time she took on Asia's case and the agency's motion for permanent custody.
 {¶ 27} The key to a finding pursuant to R.C. 2151.414(E)(1) is not whether the parent is culpable for the reasons the child was removed, but whether the parent has substantially remedied the problem or problems which prompted the children's removal from the home. In the Matter ofSara H. (Dec. 16, 1994), Lucas App. No. L-94-116. In the current case, as stated above, the initial complaint alleging Asia's status as an abused, neglected and dependent child spoke only to Angela Gordon's use of cocaine and does not mention Appellant at all. Nevertheless, the record reflects that Appellant participated in a drug assessment, accompanied Angela to Narcotics Anonymous, and completed a six-week parenting class in an apparent attempt to remedy the source of Asia's removal. Furthermore, we find that the six month time period in which the Agency attempted to assist Appellant in his effort to remedy the problems falls short of a diligent effort. Thus, we conclude that the trial court's finding pursuant to R.C. 2151.414(E)(1) is unreasonable and unsupported by clear and convincing evidence in the record.
 {¶ 28} Next, the trial court determined pursuant to R.C.2151.414(E)(4) that the Appellant demonstrated a lack of commitment toward Asia by failing to regularly support, visit, or communicate with her when able to do so. Once again, the record presents conflicting evidence on this issue. First, caseworker Lorrie Wilson testified that she provided Appellant twenty opportunities to visit Asia and of those times Appellant attended eight. Wilson stated that the family aide assigned to the case, Lashonda Gurley, also set up visits and could provide information as to Appellant's attendance at those. However, when Gurley took the stand she testified that according to her records Wilson set up approximately fifty-two visits and that Appellant attended twenty of those. Furthermore, Gurley testified that it was her duty to observe the visits which were arranged by Wilson and that she never set up visits on her own.
 {¶ 29} The differences in Wilson and Gurley's testimony is alarming to be sure, and unfortunately represent the only evidence in the record regarding Appellant's visitation history. The Agency argues that either set of numbers testified to indicates a less than fifty percent attendance rate on Appellant's part and that alone demonstrates his failure to regularly support, visit, or communicate with Asia. However even if we were to assume that one of the caseworkers provided accurate testimony, we are not convinced that Appellant's inability to attend every pre arranged visit in a six month time period demonstrates a total lack of commitment to Asia when those visits were scheduled every Tuesday and Thursday from 1 p.m. to 2 p.m. Appellant testified that he often missed visits because he had to work or because he would find Angela in a condition unsuitable for visits, circumstances that in and of themselves demonstrate a commitment to Asia.
 {¶ 30} Appellant also testified that he ceased visiting Asia in late June 2001 due to his arrest for aggravated assault, after the Agency moved for permanent custody. At the time of the hearing, Appellant was incarcerated and set to be released in June 2002. Appellant testified, and several witnesses confirmed, that during his incarceration Appellant maintained an active involvement in Asia's life by continually writing letters to her foster parents and the Agency inquiring as to Asia's well being and the progression of this case. The Agency elicited testimony from Appellant that he had not requested that Asia visit him during his incarceration because he felt that it was not in her best interest to visit him in prison.
 {¶ 31} The Ohio General Assembly did not establish a set number of parental visits that would prove that a parent was committed to their child. Nor do we intend to do so today. Rather, we focus on the particular facts of this case and the language of the statute directing the court to determine whether a parent has supported, visited, or communicate with their child when able to do so. Asia was taken into custody in November 2000. The court granted the Agency temporary custody on February 5, 2001. The Agency moved for permanent custody on June 1, 2001. We are unable to conclude that within this short period of time an unclear amount of missed visits are enough to demonstrate Appellant's lack of commitment to Asia, especially in light of the overwhelming testimony by Agency personnel that Appellant undeniably loved his daughter and was concerned with her well being. Consequently, we find that the trial court's finding pursuant to R.C. 2151.414(E)(4) is not supported by clear and convincing evidence in the record.
 {¶ 32} Finally, the trial court made a third finding pursuant to R.C. 2151.414(E)(14); that Appellant was unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect. For the same reasons as discussed above, we do not find clear and convincing evidence to this effect. The failure of a mother to provide adequate parental care will not be imputed to a father. See In Re Lay (1978), 43 Ohio App.3d 78, 81, 539 N.E.2d 664, superseded by statute on other grounds as stated in Matter of Tirado
(January 22, 1998), Mahoning App. No. 97 C.A. 26. Angela Gordon consumed illegal narcotics while pregnant with Asia. Since that time she has disappeared and has abandoned any claim to Asia. Appellant did not expose Asia to illegal drugs. Not one witness testified to any time where Appellant expressed an unwillingness to support Asia or to protect her. Appellee asserts that Appellant's failure to visit consistently and his alleged failure to undergo a drug assessment amount to an unwillingness. However, the record does not support the Agency's assertions. Appellant participated in a parenting class, went to Narcotics Anonymous meetings, went to Mercy Hall for a drug assessment and testified to a strong desire to support and protect Asia. Such contradictions render the trial court's finding pursuant to R.C. 2151.414(E)(14) unsupported by clear and convincing evidence.
 {¶ 33} For the aforementioned reasons, we disagree with the trial court's final conclusion that Asia could not be placed with her father within a reasonable time. The Appellant told the trial court that he would be ready to assume custody of Asia within one year. Appellee failed to show that Appellant was unfit or that he would not be able to assume custody within a year. One year is not an unreasonable amount of time in light of Asia's age, the stability of her current placement, and the fact that R.C. 2151.414(E)(2) advises a trial court in cases of a parent's chronic mental or emotional illness, mental retardation and physical disability to consider "whether that condition is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *." Accordingly, we sustain Appellant's first and second assignments of error.
 {¶ 34} Aside from our determination that the trial court's findings were not supported by clear and convincing evidence, one other aspect of this case causes us concern and deserves a brief discussion. Caseworker Wilson left the Agency in March 2001 and caseworker Amerson took over Asia's case in April 2001. From the record, it does not appear that the two caseworkers conducted any sort of verbal exchange of information regarding this case. In May 2001, caseworker Amerson completed a review of Asia's case plan with Asia's foster parents. Appellant does not appear to have participated in the review. The review acknowledges a problem with inconsistent vitiation, but states that Asia's permanency goal remains reunification. Interestingly enough, the review estimates that the target date for reunification is November 2002. And yet, less than a month later, the agency filed for permanent custody. Also, in the same May 2001 review, where the form leaves room to remark on the Agency's recommendation regarding filing a motion for permanent custody, the space contains the following remark, "child just entered custody." And yet, less than a month later, the agency filed for permanent custody.
 {¶ 35} In conclusion, a decision to grant permanent custody to a county children's services agency must be predicated upon a finding by the trial court that the county has made a good faith effort at achieving reunification, that the parent has been unable to provide adequate parental care and will continue to be unable to do so in the future, and that it is in the best interest of the child to permanently terminate parental rights. In re Hederson (1986), 30 Ohio App.3d 187, 189; In reVickers Children (1983), 14 Ohio App.3d 201, 204. We have previously held that the agency must make a "good faith" effort to reunify the family. In re Evans (Oct. 30, 2001), Allen App. No. No. 1-01-75, 2001-Ohio-2302. Good faith has been defined as an honest and purposeful effort. In the Matter of Hermann (Jan. 27, 1995), Miami App. No. 94 CA 12, quoting from In re Weaver (1992), 79 Ohio App.3d 59, 63. A good faith effort did not take place in this case. Rather, the Agency directly defied the notion that the termination of parental rights is an option of last resort, the final culmination of a reasonable if not exhaustive attempt to reunite parent and child. And while we do not purport to set a minimum time for the Agency to file for permanent custody, we do mean to state that when it occurs as quickly as it did here, the record should overwhelmingly support such action. Additionally, the record does not support the finding that Asia could not be returned to Appellant within a reasonable amount of time.
 {¶ 36} For the reasons stated it is the order of this Court that the judgment of the Allen County Court of Common Pleas, Juvenile Division is hereby REVERSED and REMANDED to that court for further action in accordance with this opinion.
Judgment reversed and cause remanded.
WALTERS, J., concurs in judgment only.
SHAW, P.J., dissents.
[1] The trial court made two additional findings with respect to Asia's mother. We only consider today the findings as they relate to Appellant.
[2] The only evidence of illegal substance use on the part of Appellant is caseworker Amerson's testimony that Appellant refused to undergo a drug assessment because he had recently smoked marijuana. This conversation, notably, took place after the state filed for permanent custody.