.KONNEKER in re

Ohio Appeals, 9th Dist, Summit Co

No 1494. Decided Feb 1, 1929

D H Schaffner, Akron, for Roy Konneker and Wilfred Konneker, plantiffs in error.

Grant, Thomas & Buckingham, Akron, for Grace L. Stanley, defendant in error.

PARDEE, J

The Juvenile Court, established by the general assembly and provided for in **G. C. Secs, 1639 to 1683-1**, both inclusive, came

into being through the exercise, by the legislative body, of its general police powers. The jurisdiction therein provided and conferred upon the court was unknown to the common law and was not embraced in either the civil or criminal codes of this state, and gives to said court powers which were not given to the courts of this state before. The methods provided in these sections are therefore known to the bench and bar as special statutory proceedings.

The legislature, in conferring this power upon these courts, provided in detail the steps necessary to be taken to acquire jurisdiction, and provided when, how, and under what circumstances the power may be exercised. In the juvenile court law, a delinquent child (Sec. 1644), a depedent child (Sec. 1645), and proper parental care (Sec. 1646), are defined.

This child was brought into court as an alleged dependent child.

The pertinent part of the affidavit which was filed in this case reads as follows:

"*** that he has not had proper parental care from his father, Roy Konneker, and further, that the home which said father offers said child is an unfit place for such child, for the reason of the neglect, cruelty and depravity of said Roy Konneker toward said child. Further, that the conditions and environment in which said Roy Konneker desires to rear his child are such that, in the interests of said child, Roy Konneker should be denied its custody. ***"

It will thus be seen that there are three reasons set forth therein why said child is a dependent one.

Upon the trial it was admitted by the father that he entered a plea of guilty to the crime of burglary and larceny in the Common Pleas Court of said county, and was sentenced to the Ohio penitentiary as punishment for the same, and that after serving approximately fourteen months, he was released upon parole, about March 15, 1926, and was finally discharged from said institution at the termination of the period of his parole.

The evidence in the case shows that Opal Konneker, the mother of said child, died of tuberculosis on July 5, 1926, and that on July 13, 1926, the grandmother, Grace L. Stanley, caused the arrest of the father for nonsupport of his children, and that thereafter the families lived together until Oct. 19, 1926, and from that time until he was sent to the Springfield sanatarium in July, 1927, Wilfred and his sister lived with said grandmother, who is the mother of said Opal Konneker, deceased, and that said father paid said grandmother for keeping said children and that the grandmother testified there was not anything due her for said support.

The evidence further shows that from July, 1927, up to the time of the hearing of said complaint, said minor was an inmate of the Springfield sanatarium in said county; that he was afflicted with tuberculosis; that his sister, who is about ten years of age, went with him to said sanatarium, and that she was released therefrom about Dec. 24, 1927, and is now living at Greenfield, Ohio, with and in the care of the mother and sister of said Roy Konneker, where he has placed her.

The evidence further shows that from the time of the commitment of said children to said institution, the father paid for their care therein, as required by said institution; that he was never in arrears for said payments; and at the time of the hearing of this case in the Juvenile Court, he had paid in advance for the care of said Wilfred.

The evidence also shows that the father has been living in Summit county for the last twelve years and more; that he had been regularly employed prior to the time he was confined in the penitentiary; that he has worked continuously and steadily since his release, and that no claim has been made of any misconduct by him since he was released from the penitentiary.

There was offered to sustain said affidavit, testimony regarding many acts of misconduct on the part of the father, both of serious and minor nature, of which he was alleged to be guilty but all before he was sent to the penitentiary—some of which acts had occurred many years before that date. Claim was also made that after he returned from the penitentiary and resumed living with his wife and family, he was guilty of some misconduct around the home, and was somewhat neglectful of his children.

From our examination of this record, we find that a great deal of incompetent testimony—largely of a secondhand nature—was admitted, some of which testimony tended to show that the mother of said child at her death desired her own mother to have his custody; all of which the record shows was considered by the trial judge and which, of course, was prejudicial to the father.

After separating the competent from the incompetent testimony, and giving to the competent testimony its full value, we do not find any evidence in the record justifying the conclusion reached by the trial judge. There was no evidence offered to sustain any one of the various definitions of a dependent child, as set forth in the statute.

Both before said father was sent to the penitentiary and after his release therefrom, the evidence shows that he supported his children; that he either provided them a home of his own or paid for their support elsewhere; that he furnished his family the ordinary comforts of life, such as are usually furnished by one in his station; and that he has had and does have a great affection for his children. There is no evidence of any kind that he did not give said minor proper parental care, unless it be that he permitted the child to be in the custody of its grandmother, the complaint in this case.

The other complaints in the affidavit

relate to the place where it is claimed and admitted that the father intends to place this child if. he obtains its possession and custody.

That place is the home of Roy Konneker's mother in Greenfield, Ohio, which the evidence shows is a comfortable one, with proper environment and Christian influences in a small city with good schools and churches, which the boy's sister, Winona Konneker, is attending. The evidence shows that this place is a proper and suitable one for this boy to be reared with his sister, who is now receiving proper care and attention therein

There is no evidence that the father of this child has been guilty of any cruelty, neglect or depravity towards either of his children in the past. and no evidence which raises a presumption that this condition will arise if he is permitted to take this child and place it in the same home where the boy's sister is now living, and therefore no justification for the state assuming the guardianship of said child.

One of the chief claims made against the father is that he had been guilty of a felony and had been confined in the penitentiary.

This claim puts out of view the evidence which shows that since the father returned from the penitentiary he did not violate his parole and has not done anything which would justify punishment of any kind, and denies him the privilege of reformation and the benefits which go with such reformation, but would continue to punish him for his misconduct in a way and with a severity. all out of proportion to the crime committed, and deprive him of all incentive to lead an upright and moral life.

Parents have a right to the custody of their children, the same as they have a right to the possession of property which they may acquire; and the fact that someone may think that the children can be reared better by someone else, is no justification for judicial interference, because if this were the rule, there are thousands of children in this community and in every other, whose parents, upon this pretense, would be deprived of their custody.

Not finding any evidence to. sustain the allegations of the affidavit, there was no justification, in our opinion, for taking this child from its father and depriving him of those natural rights which are more sacred to him than many others which are protected by the constitution and laws of our state.

The judgment of the trial court is therefore reversed; and now making the order that the trial court ought to have made, we dismiss the proceedings and order the custody of the child restored to its father, where it was at the time of the institution of the suit in the Court of Common Pleas.

Washburn, PJ, and Funk, J, concur.