IN RE LAY.

(No. 2293—Decided December 28, 1987.)

*Raymond E. Leisy,* assistant prosecuting attorney, for appellee Wayne County Children Services Board.

*Jaimie Swisher,* guardian ad litem, for David Lay.

*R. Robert Umholtz,* assistant public defender, for appellant Basil Lay.

*Bonnie Drushal,* for appellant Rita Lay.

GEORGE, J. Defendants-appellants, Basil and Rita Lay, appeal the order of the juvenile court granting permanent custody of their child to the Wayne County Children Services Board ("CSB"). David Lay, age eight, has been in the temporary legal custody, and for one day in the physical custody, of CSB since December 13, 1985. The reasons CSB had temporary legal custody were the parents' failure to properly supervise David, to provide him with a stimulating environment, and to provide a stable structure in his life.

These failures at parenting were due to Basil and Rita's own mental and emotional problems. Basil has been

described as being "passive and compliant with mild mental retardation." Rita has been diagnosed as an "avoidant personality with depressive features and mild mental retardation."

In December 1986 CSB moved for permanent custody of David pursuant to R.C. 2151.414. An adjudicatory hearing was held at which both Basil and Rita were represented by counsel. A guardian ad litem was appointed for David. After much testimony the juvenile court determined that David was without adequate parental care and that the best interests of the child would be served by terminating the parental rights and granting permanent custody to CSB. Appellants appeal this order.

Each appellant has raised three identical assignments of error.

"Assignments of Error

"I. Whether the trial court erred in its determination that David Lay is a child without adequate parental care by clear and convincing evidence.

"II. Whether the trial court erred in its determination that Children Services Board made a good faith effort to rehabilitate the family situation in a conscientious affirmative manner.

"III. Whether the trial court erred in its determination that permanent custody is in the best interests of the child."

Both of appellants' three assignments of error will be discussed together since some of the facts determinative of one will be determinative of the others.

A comprehensive procedure to be followed for the granting of permanent custody of a child was created by the General Assembly. R.C. 2151.414.

"* * * The primary legislative intent [of R.C. 2151.414] was to provide a method for ensuring that each child receives proper parental care or guardianship. It is axiomatic that each child needs a family. The legislation was designed to provide for social intervention into the biological family when the child's needs and welfare demand it.

"While there is a mixture of social and legal objectives present in the treatment of juvenile problems and especially the granting of permanent custody, such must be subordinate to the objective of meeting the child's best interest. *In re Tilton* (1954), 161 Ohio St. 571.

"Time is critical for a child. During the child's early years there must be a family identity and, at least, the potential that the child's physical and emotional needs will be fulfilled. The well being of the child depends upon the love, care, guidance, intellectual support, interest and attention provided by a family." *In re King* (June 15, 1983), Lorain App. Nos. 3438 and 3439, unreported, at 2-3.

Before a trial court may terminate parental rights and grant permanent custody to a board such as CSB, R.C. 2151.414(A) requires the trial court to determine: (1) that the board has made a good faith effort to implement the initial and subsequent reunification plans; (2) that the parents have acted so as to leave the child without adequate parental care and that they will continue to do so in the near future; and (3) that it is in the best interests of the child to permanently terminate parental rights. Permanent custody may be granted to CSB only if the trial court determines upon clear and convincing evidence that the child is without adequate parental care and the parents will continue to act in the near future in such a manner that the child will continue to be without adequate parental care. R.C. 2151.414(B).

The first step of the inquiry revolves around whether CSB has made a good faith effort to initiate and implement the reunification plans. The board cannot make the parents comply

with the provisions of the reunification plan. Nevertheless, the board must put forth sufficient effort which together with the available community resources and the parents' earnest efforts, could result in a reunification.

There were four reunification plans initiated by CSB since they received temporary custody of David. The reunification plans of December 20, 1985 and June 9, 1986 were essentially identical except for one addition which required Rita to take her medication. Rita did not take her medication as prescribed and subsequently was monitored by Residential Social Services to ensure that she took the prescribed medication. The third reunification plan of September 9, 1986 added a stipulation that Rita sign a mutual release for information between her doctor and CSB. CSB subsequently received a release and the case worker conferred with Dr. Miller. The first three plans were complied with by Basil although Rita failed to properly take her medication and she further failed to properly supervise David on several occasions.

Psychological reports were prepared on Basil and Rita in the fall of 1985 and 1986. These reports indicated that Basil had problems understanding directions but was capable of learning from experience. The reunification plan of October 28, 1986 had nineteen concrete and simple points with which the parents were to comply. The psychological reports indicated that this family unit could not function adequately without substantial outside support and a planned structure. It was not until the reunification plan of October 28, 1986 that the results of the psychological testing of Rita and Basil were included for consideration as a factor necessary to establish an appropriate plan.

Residential Support Services had been working with this family for approximately sixteen months when the permanent custody hearing was held. The exchange of information between these agencies was lax until the month just prior to the hearing. Although both CSB and Residential Support Services were instrumental in bringing about needed change, there were gaps in the support system necessary for the success of the reunification plans. Essentially, the turnover in social workers and the lack of information sharing between Dr. Evelyn Kirkhart, David's psychologist, CSB and Residential Support Services together were instrumental in frustrating the goals of the various reunification plans. However, even with these deficiencies, Basil did make noted progress.

A reunification plan is bilateral in the sense that it imposes duties on both the family and the agency. The establishment of such a plan should be done with the idea of looking toward the reunification of the child with his family, following the appropriate delivery of necessary services and the modification of patterns of daily living by the family. Each case must be treated by an individualized approach based on the circumstances of that case.

However, the trial court's finding of good faith which is supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. Therefore, Basil and Rita's second assignment of error is overruled.

The second step of the inquiry requires a determination of the existence of adequate parental care. R.C. 2151.414 sets out several factors to be considered in making this determination. They include, *inter alia*: the extent to which the parents have conformed to court-ordered reunification

plans; their existing mental and emotional status; and any physical, emotional, or mental neglect of the child. If the trial court finds that the child is without adequate parental care, it must then proceed to the final step of the inquiry, whether it is in the best interests of the child to permanently terminate parental rights. *In re Hoke* (Dec. 4, 1985), Summit App. No. 12064, unreported. However, the term "adequate parental care" does not require that both parents must be found capable of providing such care. And although the possibility of compliance with the reunification plan by both parents is a consideration, the failure of one parent does not automatically mean the failure of both.

There is evidence that Basil had conformed to past court-ordered reunification plans. No one disputes the fact that Basil loves his son and has tried hard despite his difficulties to provide a proper home for David. The record indicates that Basil is of low mentality, has the ability to learn, and has made real progress toward fulfilling his parental obligations.

Basil takes care of the cooking and housekeeping. He has learned to be a good cook and to do the food shopping on his own, despite his inability to read or write. He has participated in parenting classes and is currently engaged in an ongoing support group. His major problems are in the areas of carrying through on controlling and disciplining David. However, the evidence shows positive improvements in these areas since Rita has left the residence.

Residential Support Services is providing close supervision and support. That agency is implementing the suggestions made in two psychological reports indicating that Basil might be able to parent David if he received support and assistance from several community agencies. The guardian ad litem concluded that Basil may be able to continue to parent David if the following conditions were met: (1) that Rita remain in a separate residence, and (2) that Basil continue to receive extensive support from Residential Support Services and CSB.

There was evidence that Rita had some serious psychological problems that prevented her from contributing to a stable home environment for David. The record indicates that she was a disruptive influence in the home and undermined Basil's progress in parenting. At the present time Rita is living in a separate residence where she is learning to care for herself. There was testimony that her inability to interact with David had caused hostility. At the present time Rita is unable to provide adequate parental care for David.

The trial court must find by clear and convincing evidence that David is without adequate parental care and the parents will continue to act in the near future in such a manner that the child will continue to be without adequate parental care. Although the trial court has broad discretion, this court finds that the decision of the trial court, in regard to Basil, was not supported by clear and convincing evidence and that the trial court abused its discretion in finding that he did not provide adequate parental care. However, the decision of the trial court, in regard to Rita, was supported by clear and convincing evidence. Nevertheless, the failure of Rita to provide adequate parental care does not mean that David was without adequate parental care. Thus, the first assignment of error is sustained as to both Rita and Basil.

The third step of the inquiry is whether it is in the best interests of David to permanently terminate Basil's and Rita's parental rights. The record reveals that there is a strong bond between David and Basil. Dr.

Kirkhart has been seeing David on a bi-weekly basis since October 1986. In the beginning there was contact with Basil and Rita; however, Dr. Kirkhart has not talked with the parents since December 1986. Her recommendation was based on conversations with David and CSB caseworkers. Dr. Kirkhart, in addition, did not make contact with the Residential Support Services nor with David's teachers. Even given the incompleteness of the information made available to Dr. Kirkhart, she did not recommend termination of parental custody. In fact, Dr. Kirkhart stated that she was not recommending removing David from his father permanently. Dr. Kirkhart recommended a stable arrangement and one where the parents participated.

Concerning the mother, Rita, the record reveals that she was referred to parenting classes and did attend, but made little progress. She was found to have emotional needs that took precedence over her desire to provide parental care. These findings, in combination with the testimony of the social workers who dealt with Rita, reveal that she is unable to place the safety and well-being of David above her own emotional needs. Although there is evidence that Rita is making some progress in her ability to take care of herself, there is no evidence that she will be able to care for David in the near future.

Concerning the father, Basil, there is repeated testimony that Basil has made every effort to be the best father he can be. Basil has benefited from the parenting classes and money management assistance provided by Residential Support Services. There has been a marked improvement in his parenting skills and the living arrangements.

The law does not contemplate the taking of children from their parents because they can be better provided for by foster parents or adoptive parents due to greater affluency. *In re Konneker* (1929), 30 Ohio App. 502, 511, 165 N.E. 850, 853. Neither does the law contemplate taking children from their parents because they will be more intellectually stimulated in another environment. If this were so, then thousands of families would be broken up whenever it is demonstrated that their children would be either financially or intellectually better provided for in other homes. Only where there is demonstrated an incapacity on the part of the parent to provide adequate parental care, not better parental care, should parents be deprived of custody. *In re Konneker, supra.*

The purpose of R.C. 2151.01 *et seq.* is to provide for the care, protection, and mental and physical development of children and to achieve that purpose whenever possible in a family environment. Clearly, the main purpose of these code provisions is to maintain the family unit.

There is no doubt that Basil would be unable to provide adequate parental care of David without receiving substantial support from outside agencies. The record indicates that there are agencies within the community which could provide such support. CSB has provided a social worker weekly to discuss child care, supervision and home management. Residential Support Services has provided parenting classes, a support group, money management, swimming lessons and summer camp for David and has the ability to provide other independent living programs such as day treatment programs, work shops, and social interaction programs. Dr. Kirkhart is providing David with counseling and has the ability to provide family counseling.

The trial court found that the best interests of David would be served by severing the parental rights of Basil and Rita. However, the record demon-

strates that further efforts of reunification, including a coordinated effort by the community agencies available to provide support services to Basil in methods of adequate parental care for David could result in the reunification of Basil and David. Therefore, Basil and Rita's third assignment of error is sustained.

In view of the above, the trial court's judgment granting permanent custody of David to CSB and terminating Basil's and Rita's parental rights is reversed. This matter is remanded to the trial court to reinstate the temporary custody award and for such other proceedings as might be consistent with this opinion.

*Judgment reversed and cause remanded.*

BAIRD, P.J., and CACIOPPO, J., concur.