DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating parental rights and granting permanent custody of two children to a county children's services agency. Because we conclude that the trial court's judgment was not supported by the record, we reverse.
 {¶ 2} Appellant, Reta B., is the mother of two children: Rashaun B., now age four, and Angelique B., now age two.[1]
 {¶ 3} On December 2, 2001, shortly after Angelique's birth, appellant left the children with a cousin. After two days the cousin, apparently overwhelmed by two more children in addition to her own, called appellant's mother who took the children until appellant returned. Appellee, Lucas County Children Services Board, apparently became involved at this point.
 {¶ 4} About a week later, both children became ill and were taken by appellant and her mother to a hospital where they were diagnosed and treated for bronchitis. The children were sent home with instructions that appellant continue breathing treatments there.
 {¶ 5} After returning home, Angelique became increasingly ill. Eventually, she was hospitalized. Appellant told appellee's caseworker that she had not provided Angelique with the respiratory treatment that had been ordered. Appellant explained that she was too exhausted to administer Angelique's medicine in the middle of the night.
 {¶ 6} On December 28, 2001, appellee sought and was granted an ex parte order removing the children from appellee's home. On December 31, 2001, appellee filed a complaint alleging that Rashaun and Angelique were neglected and dependent. The complaint reiterated the allegation of medical neglect that was the basis of the ex parte order and added assertions that appellant was "intellectually limited and has mental health problems." The complaint also states that appellant once "shook Rashaun in anger" a year earlier. With the filing of the complaint, appellee sought and, following a hearing, was granted shelter care of both children.
 {¶ 7} Following a February 19, 2002 hearing, appellant consented to a finding of neglect and dependency for both children and an award to appellee of temporary custody for both children. Concurrent with the adjudication, appellant and appellee agreed upon a case plan with reunification of the family as its goal. The case plan called for anger management assessment and treatment, parenting classes, mental retardation/developmental disability assessment, and G.E.D. classes for appellant. A child visitation schedule was also installed.
 {¶ 8} On February 18, 2003, appellee moved for permanent custody of both children. At trial, appellant presented evidence that she had completed anger management treatment, completed three separate parenting classes and was enrolled in a course to obtain her high school diploma.
 {¶ 9} At the time of the hearing, she had been employed at McDonald's for nearly a year. Her McDonald's supervisor testified that appellant exhibited an excellent work ethic and had been given increasing responsibility over time.
 {¶ 10} The psychologist who evaluated her testified that she was borderline developmentally disabled, but that he knew "many people who have similar abilities who are parenting." It was undisputed that, during appellee's custody of the children, appellant was never late or missed a visitation.
 {¶ 11} Appellee presented evidence that appellant was living with her mother, while saving to acquire her own housing. Appellee also presented evidence that appellant's boyfriend had a criminal record.
 {¶ 12} Following the hearing, the court terminated appellant's parental rights, awarded permanent custody of Rashaun and Angelique to appellee and ordered appellee's attorney to prepare the judgment entry. In that entry, the court found that appellee had proven the requirements of R.C. 2151.414(E)(1) and (16) .
 {¶ 13} From this judgment appellant now brings this appeal, setting forth the following single assignment of error:
 {¶ 14} "The trial court's finding that permanent custody should be awarded to Lucas County Children Services pursuant to O.R.C. § 2151.414(D) (E) was not supported by clear and convincing evidence."
 {¶ 15} The right of a family to remain intact is constitutionally protected. Stanley v. Illinois (1972), 405 U.S. 645, 651. Judicial decisions terminating parental rights are carefully scrutinized. Permanent removal may be condoned, "[o]nly where there is demonstrated an incapacity on the part of the parent to provide adequate parental care, not better parental care, should parents be deprived of custody." In reLay (1987), 43 Ohio App.3d 78, 82, citing In re Konneker (1929),30 Ohio App. 502, 511. "Before any court may consider whether a child's best interests may be served by permanent removal from his or her family, there must first be a determination that the parents are `unfit.'" In re Stacey S. (1999), 136 Ohio App.3d 503, 516, citingQuillon v. Walcott (1978), 434 U.S. 246, 254.
 {¶ 16} In Ohio, the equivalent of parental unfitness for a child who is not abandoned or orphaned is a statutory determination that the child, "* * * cannot be placed with either parent within a reasonable period of time or should not be placed with the parents * * *." R.C.2151.414(E). To reach such a conclusion, the court must find by clear and convincing evidence that at least 1 of the 16 predicate conditions enumerated in R.C. 2151.414(E)(1) through (16) exists. Such a determination must be made antecedent to any "best interests" analysis.In re Stacey S., supra, at 517; see, also, In re William S. (1996),75 Ohio St.3d 95, 97.
 {¶ 17} Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. On review, a finding of a trial court will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the statutory elements for a termination of parental rights have been established. In re Forrest S.
(1995), 102 Ohio App.3d 338, 344-345.
 {¶ 18} In this matter, the trial court premised its conclusion that Rashaun and Angelique cannot now, nor within a reasonable time, be reunited with appellant on findings that R.C. 2151.414(E)(1) and (16) were proved. These provisions permit a conclusion that a child cannot or should not be reunified when:
 {¶ 19} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 20} "* * *
 {¶ 21} "(16) Any other factor the court considers relevant."
 {¶ 22} Other sections permit the conclusion that a child cannot or should not be reunified if the parent has chronic mental illness, abused a child, failed to support or provide a home for the child, been convicted of a serious offense against a child, repeatedly withheld medical treatment or food from the child, placed the child at a substantial risk, will be incarcerated for a long period, is unwilling to provide necessities for the child, or poses a threat to the child's safety. We have held that for a court to utilize the R.C. 2151.414(E)(16) "other factors" it must articulate with specificity what factor or factors the court feels can be a substitute for one of the (E)(1) through (15) findings. In re Alyssa Nicole C., 153 Ohio App.3d 10, 16-17,2003-Ohio-2673, at ¶ 31; In re Crystal C., 6th Dist. No. L-01-1336, 2002-Ohio-855; In re Tashalyla S., 6th Dist. No. L-03-1253, 2004-Ohio-896, at ¶ 24.
 {¶ 23} In this matter, the trial court enumerates several findings, then summarily concludes that "given the above findings of fact * * * the requirements of R.C. 2151.414(E)(1) and (16) are met * * *." There is no attempt by the court to explain which of its findings relate to which provision or how any, or all, of the findings equate to one of the (E)(1) through (15) findings. Moreover, the findings are not only unsupported by the record, but are frequently contradicted by it.
 {¶ 24} The court found that one of appellant's parenting counselors believed appellant needed more anger management counseling. The counselor, asked how she felt about anger counseling for appellant, responded:
 {¶ 25} "A. The anger piece in counseling, that way is not something that I am familiar intimately with what would go on. I'm curious to see how much of the anger is related to the fact she doesn't have her children with her. You know, and the stress of not knowing what that outcome is going to be. Or the fact her children are not going to be with her. So it might relieve it. It might make things a whole lot easier and it might ease some of that. So I guess I would — I would say yes, I'd like to see that."
 {¶ 26} The counselor earlier testified that she had never seen appellant behave angrily with her children, but had expressed anger in a group setting. The counselor expressly denied a present opinion that appellant's anger would make it difficult for her to parent. Moreover, appellant's own caseworker testified that she had completed anger management classes and the requirement was dropped from the case plan.
 {¶ 27} A second finding recounted the testimony of appellant's psychological evaluator who stated that appellant functioned in the "low average range of ability" and that her limited social comprehension might cause her to, "* * * react inappropriately due to anxiety." The context out of which these quotes were taken, however, was part of an implicit criticism of the manner in which appellee dealt with appellant. A fair reading of the psychologist's testimony discloses that he believed appellee failed to take into account appellant's individual circumstances when dealing with her and the result was frequently confrontational.
 {¶ 28} The thrust of the psychologist's testimony, however, was in response to a question about whether appellant's limited intellect might prohibit her from adequate parenting. His response: "* * * I have worked with many people who have similar abilities who are parenting."
 {¶ 29} The court also found that, earning $5.90 an hour at McDonald's, appellant had limited financial resources and overly relied on her mother and her boyfriend. Appellant, at the time of the hearing, was living with her mother, "* * * trying to save money to move out * * *." The trial court noted that the boyfriend, "* * * or perhaps her fiance — it is difficult to gauge the level of his commitment — has a significant criminal history and an active felony case."
 {¶ 30} We are unaware of any case or statute which imposes means testing on the right of parenthood. At trial, appellant's unrefuted testimony was that she had nearly saved enough money to get independent housing and would certainly have more than enough when her income tax refund came. Concerning appellant's boyfriend, he does not live with appellant and had no charges which might reflect negatively on his parenting ability. Indeed, appellant's boyfriend attended several interactive parenting classes with appellant and, according to the teacher, the children "responded very well" to him. Indeed, appellee's caseworker testified that she told appellant that her boyfriend would not impede appellant from being a caregiver to her children.
 {¶ 31} Finally, the court found that appellant, "* * * has exposed her children to cigarette smoke, despite their respiratory problems [and] still has difficulty controlling her temper and has been explosive in the presence of the children."
 {¶ 32} The reiteration that appellant was angry remains negated by appellee's caseworker's testimony that anger management training had been completed and removed from the case plan. The reference to being "explosive in the presence of the children" relates to an incident in which appellant confronted appellee with evidence that Rashaun was being physically abused in his first foster home placement. Although Rashaun was eventually removed from that foster home, at the time of the "explosive" incident appellant was frustrated that appellee did not appear to take seriously the marks on Rashaun's body.
 {¶ 33} With respect to smoking in the children's presence, the only reports of this occurring were on occasions when appellant and the children were outdoors. There was no testimony that this was detrimental to the children or that appellant had been advised to refrain from smoking outdoors near her children.
 {¶ 34} The trial court's conclusion that R.C. 2151.414(E)(16) has been satisfied is neither articulated with sufficient specificity nor supported by the record.
 {¶ 35} With respect to the R.C. 2151.414(E)(1) finding, appellee's caseworker testified that the reason the children were removed from the home was appellant's failure to administer breathing treatments when the children were ill. Despite this, there was absolutely no testimony as to whether appellant's completion of her case plan did or did not remedy this behavior. Since the burden is on appellee to provide clear and convincing evidence that appellant failed to substantially remedy the condition which caused the children to be removed from the home, we must conclude that appellee failed to meet its burden. Accordingly, appellant's sole assignment of error is well-taken.
 {¶ 36} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. Pursuant to App.R. 24, court costs to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J. Singer, J., concur.
[1] The children's fathers were parties in the proceedings in the trial court, but have not joined this appeal.