In re ALEXIS K. et al.

[Cite as *In re Alexis K.*, 160 Ohio App.3d 32, 2005-Ohio-1380.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–04–013.

Decided March 24, 2005.

34

Brian W. Kaiser, for appellant Dawn K.

Craig L. Roth, Williams County Prosecuting Attorney, and Thomas A. Thompson, Assistant Prosecuting Attorney, for appellee Williams County Department of Job and Family Services.

SINGER, Presiding Judge.

{¶ 1} This is an appeal from a judgment of the Williams County Court of Common Pleas, Juvenile Division, terminating a mother's parental rights and granting permanent custody of two of her children to a county·department of job and family services. Because we conclude that the record fails to support the trial court's decision, we reverse.

{¶ 2} Appellant, Dawn K., and her husband, Robert K., separated in early 2001 after a number of years of marriage. In August 2001, appellant left her five children with a friend, Michael Metzger, while, according to appellant, she drove a friend to another town. Appellant testified that, while she was gone, her car broke down and she could not return as anticipated. Whatever the case, when appellant had not returned for several days, Metzger contacted Robert K., who in turn notified appellee, Williams County Department of Job and Family Services.

{¶ 3} On August 27, 2001, appellee took custody of the children. Caseworkers found the children unfed, unclean, and with minor bruises. According to the testimony of appellee's caseworker supervisor, the children alleged that Metzger "was hurting them and leaving them, leaving bruises." Although appellant denied recollection of being informed of this, the supervisor testified that she told appellant of the children saying that Metzger "wasn't very nice to them." On cross-examination, the supervisor conceded that the agency had not pursued charges against Metzger because what was alleged was "mistreatment, not abuse."

{¶ 4} All five children remained with appellee until May 2002, at which point legal custody was transferred to appellant's husband, Robert K. Appellee retained protective supervision of the five until July 2002.

{¶ 5} At some point not clear from the record, genetic testing revealed that Brysten Allen K., now eight, and Alexis Kaye K., now five, were not the biological children of Robert K. Perhaps because of this, in the fall of 2002, when Robert K. relocated to Florida, he left these two children and a 12–year–old daughter with appellant.

{¶ 6} In late November 2002, appellant again left Alexis and Brysten[1] with Michael Metzger for a period of several days. On December 5, 2002, Metzger called appellee, advising that he no longer wished to care for the children and that he did not know appellant's whereabouts. Appellee took emergency custody of the children and filed a complaint alleging that the children were neglected.

---

1. The 12–year–old at this point was residing with her maternal grandparents.

On January 14, 2003, appellant consented to a finding of neglect. Appellee was awarded temporary custody.

{¶ 7} Appellee initially filed a case plan seeking termination of parental rights. After the consent finding, however, it modified its plan with a goal of reunification of the family. To accomplish this, appellant was tasked to (1) complete parenting classes, (2) obtain stable employment, (3) obtain stable housing, and (4) resolve legal problems relating to bad-check convictions in Bryan and Defiance Municipal Courts. A second amended case plan later added a psychological evaluation and counseling, if recommended, for appellant.

{¶ 8} Appellant completed her parenting classes and, although delayed, eventually completed the psychological evaluation. She was less successful in obtaining steady employment or consistent housing. Her problems with the Bryan and Defiance Municipal Courts continued throughout the hearings on this matter.

{¶ 9} On December 1, 2003, appellee moved for permanent custody. The matter proceeded to a four-day trial, beginning on April 27, 2004, and concluding on August 20, 2004.

{¶ 10} At trial, the social worker assigned to appellant's case testified that permanent custody of the children was being sought, not because of a concern for appellant's parenting skills or her bond with the children, but because appellant's inability to obtain and keep employment negated her ability to provide an adequate home for the children. Indeed, for most of the period during which the agency dealt with appellant she was functionally homeless, living with friends for brief periods. The social worker also noted that appellant was unreliable at documenting her job search and inconsistent in keeping appointments.

{¶ 11} In July 2003, nearly six months after evaluation was indicated in the case plan, appellant was evaluated by a psychologist. The psychologist testified that appellant had a generalized anxiety disorder, which should be easily treatable with medication and counseling. Appellant also was diagnosed with a personality disorder with a combination of dependent, narcissistic, and antisocial traits. The psychologist testified that such traits are more difficult to treat, requiring more concentrated, long-term therapy. The psychologist recommended that appellant receive counseling and therapy to treat these disorders.

{¶ 12} Appellant testified on her own behalf, explaining that when her then husband moved to Florida, he left her with three children and no job. She testified that she was soon unable to pay the rent on the house in which she and the children were living and had to move in with friends. When her car broke down she no longer had her own transportation and was forced to rely on friends to take her to work when she did find a job. Once the children were taken from her, the aid she received for them also stopped. Because much of the time while

the case plan was proceeding, she lived in Defiance County, she was ineligible for housing assistance in Williams County. Moreover, because of her failure to timely provide documents to the Defiance County authorities, she was sanctioned with a 90–day loss of benefits for herself.

{¶ 13} The result of all this was that during the pendency of the case, appellant worked at more than ten jobs and lived in nearly a dozen places. Additionally, appellant was convicted of passing bad checks in both Bryan and Defiance. When she did not make the court-ordered payments for restitution and fines, she was arrested and incarcerated for nearly three weeks while the trial in this matter was proceeding.

{¶ 14} At the conclusion of the trial, the court concluded that due to appellant's "unstable behavior * * *, sporadic employment, multitude of residences, history of incarceration and untreated mental health conditions, it is unlikely that the children could return to the mother's custody within a reasonable time."

{¶ 15} The court found that appellee had proven the factors enumerated in R.C. 2151.414(E)(1), (2), (3), (4), and (12), terminated appellant's parental rights, and granted permanent custody of Alexis and Brysten to appellee.

{¶ 16} From this judgment, appellant now brings this appeal, setting forth the following two assignments of error:

{¶ 17} "I. The trial court erred in granting permanent custody as the decision was against the manifest weight of the evidence.

{¶ 18} "A. The county failed to show a reasonable good faith effort to reunify the children with parent.

{¶ 19} "B. The county failed to show the children could not be reunified with appellant within any reasonable amount of time, specifically failing to show appellant's conditions creating dependency would continue in the future.

{¶ 20} "II. The trial court erred in not causing the children's wishes to be determined and considered as part of its decision."

{¶ 21} A parent's rights to conceive and rear his or her child have been "deemed 'essential,' *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), 'basic civil rights of man,' *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), and '[r]ights far more precious * * * than property rights.' *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)." *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. The inviolability of the

parent-child relationship finds protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042, the Equal Protection Clause of the Fourteen Amendment, *Skinner v. Oklahoma*, 316 U.S. at 541, 62 S.Ct. 1110, 86 L.Ed. 1655; *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599, and the Ninth Amendment, *Griswold v. Connecticut* (1965), 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (Goldberg, J., concurring).

{¶ 22} Moreover, "[t]he law does not contemplate the taking of children from their parents because they can be better provided for by foster parents or adoptive parents due to greater affluency." *In re Lay* (1987), 43 Ohio App.3d 78, 82, 539 N.E.2d 664, citing *In re Konneker* (1929), 30 Ohio App. 502, 511, 165 N.E. 850. Only where there is a "demonstrated incapacity or something akin to criminal neglect that the law is justified in interfering with the natural relations of parent and child." *Konneker*, 30 Ohio App. at 511, 165 N.E. 850.

{¶ 23} In Ohio, it has long been held that parents who are suitable persons maintain a paramount right to custody of their minor children. *Clark v. Bayer* (1877), 32 Ohio St. 299, 310; *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 369 N.E.2d 1047; *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. The state may not award permanent custody of a child absent a predicate finding that the child's natural parents are unsuitable. *In re Perales*, supra, syllabus.

{¶ 24} The Ohio General Assembly most recently has defined parental unfitness for a child who is not abandoned or orphaned as a finding that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a). To enter such a finding, the court must conclude that the evidence presented clearly and convincingly discloses that the parent in question is unsuitable for one of the reasons articulated in R.C. 2151.414(E). *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738, syllabus. Because the right to raise and nurture one's child is so basic, statutory conditions which defeat that right must be strictly construed. *In re Cunningham* (1979), 59 Ohio St.2d 100, 105, 13 O.O.3d 78, 391 N.E.2d 1034.

## I.  MANIFEST WEIGHT

{¶ 25} In her first assignment of error, appellant asserts that the trial court's determination to terminate her parental rights was against the manifest weight of the evidence, in that (1) appellee failed to show a reasonable good faith effort to reunify the family and (2) the finding that the children cannot now or should not be reunited with appellant was unsupported by the evidence.

{¶ 26} In a termination-of-parental-rights proceeding, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E). The court's decision to terminate parental rights, however, will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. *In re Forrest S.* (1995), 102 Ohio App.3d 338, 345, 657 N.E.2d 307; *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 27} Here, the trial court concluded that appellee had properly proved the elements of R.C. 2151.414(E)(1), (2), (3), (4), and (12).

{¶ 28} R.C. 2151.414(E) provides:

{¶ 29} "(E) In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶ 30} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 31} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [permanent custody hearing];

{¶ 32} "(3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect * * *, or allowed the child to suffer any neglect * * * between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

{¶ 33} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶ 34} "* * *

{¶ 35} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."

{¶ 36} Appellant insists in the first part of her first assignment of error that appellee failed to prove a "reasonable good faith effort to reunify" appellant and these children. The only relevant section of R.C. 2151.414 to which appellee's efforts are at issue is section (E)(1). That section tasks a children services agency responsible for the removal of a child from his or her home with providing "reasonable case planning" and exerting "diligent efforts" to help a parent remedy the problem causing the child's removal.

{¶ 37} Appellant certainly has an argument with respect to the "diligent efforts" portion of this equation. The initial case plan called for appellee to schedule a psychological evaluation for appellant by the end of February. The agency did not arrange for a psychological evaluation until nearly five months later, at a point at which it had already determined to seek permanent custody. Moreover, appellee failed to take any action to implement the psychologist's recommendations after the evaluation, another objective in the case plan. The agency did schedule parenting classes for appellant, which she successfully completed.

{¶ 38} The remainder of the case plan is directed to appellant becoming financially stable. Here the story becomes almost Kafkaesque: Because appellant had no money she could not obtain reliable transportation. Without reliable transportation, appellant could not get or keep employment. Because she could not keep employment, she had no money to get transportation. Because appellant lived, for the most part, in Defiance County, housing assistance in Williams County, according to appellee, was unavailable. After appellee removed the children, appellant was no longer eligible for assistance for them and could not rely on that to help support a household. Appellant herself was cut off from direct assistance in Defiance County, apparently as a sanction for failure to timely file documents there. During this period, appellant was convicted of passing bad checks in Defiance and Bryan and ordered to pay restitution, fines, and costs. Her failure to make timely payments in these court matters resulted in her arrest and incarceration for 18 days during the pendency of this case.

{¶ 39} Appellee's response to all of this seems to have been to order appellant to find a job and suitable housing and, at one point, pay $90 so that appellant could take a state test to qualify as a nursing assistant.

{¶ 40} Even assuming that appellee's circumscribed compliance with its own case plan constituted the statutorily imposed "diligent efforts," there is still a problem with the trial court's R.C. 2151.414(E)(1) finding. Alexis and Brysten were removed from appellant's home when she left them with Michael Metzger and he tired of caring for them. There is conflicting testimony between appellant's social worker and the social worker's supervisor as to whether Metzger had previously abused the children and whether appellant was ever so informed. Nevertheless, appellee concluded that, given Metzger's prior volatility, to again entrust children to him was a poor parenting decision.

{¶ 41} The portions of appellee's case plan directed to this issue offer as an aspirational goal that appellant will learn to "protect her children from all harm and will not expose them to offenders who have hurt them in the past." The action plan to meet this goal was parenting classes for appellant.

{¶ 42} It is undisputed that appellant successfully completed parenting classes. Since the children were never returned to her custody, a practical test of appellant's skill never occurred. Without an opportunity for a practical application of the only skills appellee deemed necessary to remediate the condition prompting the children's removal, we fail to see clear and convincing evidence that appellant did not remedy the conditions that prompted the children's removal from the home. Accordingly, the R.C. 2151.414(E)(1) element was not proven.

{¶ 43} Notwithstanding our conclusion that the R.C. 2151.414(E)(1) finding is not supported, the trial court should be affirmed if any of the other statutory predicate findings is supported by the evidence. *In re William S.*, supra, 75 Ohio St.3d 95, 661 N.E.2d 738; *In re Alyssa Nicole C.*, 153 Ohio App.3d 10, 14, 2003-Ohio-2673, 790 N.E.2d 803, at ¶ 13.

{¶ 44} A finding of chronic mental or emotional illness, pursuant to R.C. 2151.414(E)(2), is also unsupported. Although the evaluating psychologist testified that appellant suffered from a "generalized anxiety disorder" and a personality disorder, there was no evidence in the record that there is a causative relationship between these conditions and appellant's difficulty in maintaining an adequate home. Indeed, the psychologist testified that appellant's anxiety was easily treatable with medication. The personality disorder, according to the psychologist, was more difficult to treat, requiring a minimum of a year of therapy. Appellee did not elicit an opinion from the psychologist as to whether appellant's disorders were so severe as to make her unable to provide a home for

the children. It was not requested that appellant be evaluated for her parenting skills. Absent testimony that appellant's condition was chronic or severe and without an offered opinion that appellant could not provide an adequate home within a year, an R.C. 2151.414(E)(2) finding is unfounded.

{¶ 45} An R.C. 2151.414(E)(3) finding is unsupported because the children were never again in appellant's custody after the original neglect complaint in this matter. Appellee would have us look to the time the children were first taken from Michael Metzger, but that record is not in evidence in this case. The only complaint before the trial court was the one filed December 6, 2002. Since appellant never had custody of the children after that date, (E)(3) is inapplicable.

{¶ 46} Concerning R.C. 2151.414(E)(4), there is no allegation that appellant failed to visit or communicate with the children. Neither is there a suggestion that appellant was unwilling to make an adequate home for the children: unable, perhaps, but not unwilling. Inability to provide a home does not satisfy the statute. *In re William S.*, supra, 75 Ohio St.3d at 100, 661 N.E.2d 738. Appellee did present evidence that appellant frequently failed to meet her child-support obligation, but presented no evidence to suggest that appellant was able to pay child support during this time. The burden is on the party seeking permanent custody to prove each element of its case by clear and convincing evidence. A parent's ability to provide support is an essential element of R.C. 2151.414(E)(4).

{¶ 47} Remaining is the finding under R.C. 2151.414(E)(12) that the parent is incarcerated at the time of filing or at the dispositional hearing and will not be available to care for the child for at least 18 months. We do not perceive "incarcerated" as used in this section to encompass only a portion of the dispositional hearing. The import of this section clearly is that a parent is jailed at the time of the motion or dispositional hearing and will not be let free for at least 18 months.

{¶ 48} The dispositional hearing in this matter extended from April until late August 2003. Part of the time appellant was jailed for violating the terms of restitution on her bad-check charges. There was no testimony, however, that appellant would be rearrested or would continue to be locked up for any amount of time in the future, let alone 18 months. Consequently, this finding also fails for want of evidence.

{¶ 49} Accordingly, appellant's first assignment of error is well taken.

## II. GUARDIAN AD LITEM

{¶ 50} Ordinarily, having determined that a judgment should be reversed, we would not address remaining assignments of error. In this matter, however,

because we conclude that appellant's second assignment of error constitutes an independent ground for reversal, we shall discuss this assignment.

{¶ 51} Appellant couches this assignment of error in terms of a trial court failure to consider the children's wishes in reaching its conclusion. The issue arises because the court-appointed guardian ad litem testified that in fashioning his report, he did not ask the children their wishes. Indeed, the guardian could not recall if he had ever interviewed the children during the pendency of this case. In any event, the guardian suggested, the children were too immature to hold an opinion.

{¶ 52} At trial, appellant's counsel argued that since the guardian failed to take into account the children's wishes, he had failed his statutory duty under R.C. 2151.414(D)(1) and (2). We see a more fundamental problem.

{¶ 53} Juv.R. 4(A) provides that children who are the subject of a juvenile proceeding, including a permanent-custody action, have a right to counsel. It is the trial court's obligation to ensure that this right is not violated. Id.

{¶ 54} The document appointing the guardian ad litem is not in the case file. Since no separate counsel for the children appeared during the dispositional hearing, we presume that the guardian assumed the dual roles of guardian and counsel for the children. This is permissible. Juv.R. 4(C).

{¶ 55} As we have previously noted, however, these two roles can be distinct and sometimes conflicting. The guardian ad litem is to investigate the situation of his ward and urge the court to adopt the position which the guardian ad litem believes is in the ward's best interests. *In re Stacey S.* (1999), 136 Ohio App.3d 503, 514, 737 N.E.2d 92, citing *In re Howard* (1997), 119 Ohio App.3d 201, 206, 695 N.E.2d 1. The attorney is spokesperson for the ward's wishes and is ethically bound to zealously advance those wishes within the bounds of the law. Id.

{¶ 56} Ordinarily, the court should inquire as to whether a conflict in these roles exist. *In re Duncan/Walker* (1996), 109 Ohio App.3d 841, 845, 673 N.E.2d 217. During trial, any suggestion that a conflict exists should prompt an inquiry. *In re Stacey S.*, supra, 136 Ohio App.3d 503, 737 N.E.2d 92.

{¶ 57} Here, there was unrefuted testimony that, whatever other problems appellant may have encountered, she and the children were bonded. This would ordinarily suggest that the children wished to stay with their mother. This is a position antithetical to the position advanced by the guardian ad litem in his report. Moreover, when the guardian testified that he had never inquired as to this then seven-year-old's and this then four-year-old's wishes, the court had an obligation to ascertain whether the children were being properly represented.

Absent such an inquiry, it would seem that the children were denied proper legal representation during these proceedings. The denial of counsel for a child during the dispositional hearing of a termination-of-parental-rights proceeding is plain error. *In re Alyssa Nicole C.*, supra, 153 Ohio App.3d at 17–19, 2003-Ohio-2673, 790 N.E.2d 803, at ¶ 37–40. Accordingly, appellant's second assignment of error is well taken.

## III. "TWELVE OF TWENTY–TWO"

{¶ 58} Although the trial court did not invoke the provisions of R.C. 2151.414(B)(1)(d) in this matter, appellee repeatedly urged it to do so. This section seems to circumvent a need for a parental-fitness analysis by declaring that permanent custody may be granted to children's services agency if "[t]he child has been in the temporary custody * * * for twelve or more months of a consecutive twenty-two month period * * *."

{¶ 59} As we have previously noted, this provision on its face may not survive the stringent due process scrutiny to which termination-of-parental-rights cases are subjected. *In re Delfino L. M.*, 6th Dist. No. L–04–1010, 2005-Ohio-320, 2005 WL 195488, at ¶ 24; see, also, *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680; *In re C.W.*, 104 Ohio St.3d 163, 167, 2004-Ohio-6411, 818 N.E.2d 1176, at ¶ 23, citing *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Moreover, as applied to this party, the statute's application would seem even more egregious, as it appears that the reason for much of the time these children have been in appellee's custody was appellee's failure for a period of several months to follow its own case plan in psychologically evaluating appellant and implementing the psychologist's recommendations. In our view, the trial court's decision to decline to apply R.C. 2151.414(B)(1)(d) in this matter was proper.

{¶ 60} On consideration whereof, the judgment of the Williams County Court of Common Pleas, Juvenile Division, is reversed. This matter is remanded to that court for further proceedings consistent with this decision. Costs to appellee pursuant to App.R. 24.

Judgment reversed
and cause remanded.

HANDWORK and PIETRYKOWSKI, JJ., concur.