DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, Juvenile Division, which granted permanent custody of Cassandra, Amber, David and Jose M. to the Wood County Department of Job and Family Services ("WCDJFS".) For the following reasons, we reverse.
 {¶ 2} Appellant, Tina T., is the biological mother of Cassandra (born 1991), Amber (born 1994), David (born 1995) and, Jose (born 1996). At the time of these proceedings, the children's biological father, David M., could not be located. On November 5, 2003, WCDJFS filed a complaint alleging the children were dependent. According to the complaint, appellant contacted WCDJFS and explained that she and the children were living in a motel. She further indicated that she and the children were going to be evicted on November 5, 2003 and that they had nowhere to go. Appellant was unemployed and could not provide the names of any friends or family members capable of caring for her children. On November 10, 2003, the juvenile court awarded temporary custody of the children to WCDJFS.
 {¶ 3} On December 9, 2003, a hearing was held wherein appellant and WCDJFS agreed to stipulate to the facts in the complaint. Based on the stipulation, the court adjudicated the children dependent. A case plan was developed wherein appellant was required to obtain employment, undergo a mental health assessment and find suitable housing.
 {¶ 4} On January 13, 2005, WCDJFS filed a motion for permanent custody of the children. A hearing commenced on March 31, 2005. Counselors for the children testified that all four love their mother but they are frustrated with her inability to find suitable housing and the instability of their current relationship with her. None of the children alleged that their mother physically or sexually abused them. Nor were there any substance abuse issues. On April 22, 2005, the court denied the motion and extended the WCDJFS's temporary custody order. The court stated:
 {¶ 5} "[T]he court is convinced now is not the time to permanently terminate the natural mother's rights. Rather, allowing an extension of the existing temporary custody order will allow the children to continue to have contact with their mother while remaining in a stable foster home for the balance of the subject matter school year and the upcoming summer. Further, this additional time will allow the mother one final opportunity to demonstrate she has the ability and willingness to make strong and decisive efforts to obtain suitable housing for the children. Failure of mother to obtain housing or complete the case plan in this additional time may well lead the court to conclude mother is unwilling to take the steps to provide suitable housing or otherwise is necessary to reunite with her children."
 {¶ 6} On August 17, 2005, WCDJFS filed a "motion for sunset review and motion for permanent custody." A hearing commenced on October 25, 2005. On November 4, 2005, the trial court granted permanent custody of the children to WCDJFS. Appellant now appeals setting forth the following assignment of error:
 {¶ 7} "The trial court erred in determining that appellant mother's parental rights should be terminated, and that the State of Ohio's motion for permanent custody should be granted, pursuant to R.C. 2151.353, 2151.413 and 2151.414 of the Ohio Revised Code."
 {¶ 8} "In Ohio, it has long been held that parents who are suitable persons maintain a paramount right to custody of their minor children. Clark v. Bayer (1877), 32 Ohio St. 299, 310;In re Perales (1977), 52 Ohio St.2d 89, 97; In re Murray
(1990), 52 Ohio St.3d 155, 157. The state may not award permanent custody of a child absent a predicate finding that the child's natural parents are unsuitable. In re Perales, supra, syllabus.
 {¶ 9} "The Ohio General Assembly most recently has defined parental unfitness for a child who is not abandoned or orphaned as a finding that the child, `* * * cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.' R.C. 2151.414(B)(1)(a). To enter such a finding, the court must conclude that the evidence presented clearly and convincingly discloses that the parent in question is unsuitable for one of the reasons articulated in R.C. 2151.414(E)". In re Alexis K., 160 Ohio App.3d 32, 39,2005-Ohio-1380, at ¶ 24.
 {¶ 10} Since all findings in a termination of parental rights proceeding must be supported by clear and convincing evidence, a court's decision to terminate parental rights will not be disturbed on appeal if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. Id. at ¶ 26, citing In re Forest S. (1995), 102 Ohio App.3d 338, 345;Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 11} In its judgment entry, the court found that the children could not be placed with either parent within a reasonable time or should not be placed with either parent. Underlying this conclusion was a determination that the evidence clearly and convincingly established one of the conditions under R.C. 2151.414(E), specifically, R.C. 2151.414(E)(14) . If any one of the 16 predicate findings under R.C. 2151.414(E) is supported by the evidence, the court's decision must be sustained. In reAlexis K., supra, at 34, 2005-Ohio-1380, at ¶ 24, 160 Ohio App.3d.
 {¶ 12} In material part, R.C. 2151.414(E) provides:
 {¶ 13} "If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 14} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
 {¶ 15} "* * *
 {¶ 16} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect. * * *
 {¶ 17} At the permanent custody hearing, case worker Kelly Conley testified that appellant was living at the Best Motel in Bowling Green. Appellant had been living there since November 2003. Conley testified that appellant fulfilled all of her case plan goals with the exception of finding "suitable housing." Conley testified that if appellant were to find suitable housing, the agency would pay her first month's rent, her overdue utility bills and the security deposit. Conley testified that on August 9, 2005, appellant contacted her to discuss a house she was interested in renting. The monthly rent was $600 plus utilities. Conley testified that she did not think appellant could afford the house on her salary even if WCDJFS paid the first month's rent and the security deposit. Additionally, Conley was concerned about the layout of the house. The two bedrooms upstairs were attached. Conley did not like the fact that the girls would have to walk through the boy's bedroom to get to their own bedroom. Conley testified that the agency "had some concern regarding sexual abuse between Amber and David." Conley, however, did not elaborate. On cross-examination, Conley testified that it would be an acceptable arrangement if the girls slept upstairs and the boys slept downstairs with appellant.
 {¶ 18} Appellant also suggested that she could get a bigger motel room at the Buckeye Budget Motel. The room would include a kitchenette with 2 beds. Appellant told Conley she could place a partition between the two beds to create privacy. Conley testified that the agency did not consider the room to be suitable housing because of the amount of space. She additionally noted that the motel restricted room occupancy to four people.
 {¶ 19} Conley testified that she continually asked appellant if she had found housing. She suggested apartment complexes and looked through the newspaper for places appellant could rent. However, Conley testified that she could not find anything in appellant's price range. She testified that the agency had made no attempt to obtain section 8 housing for appellant. She also testified that she suggested some low income housing locations to appellant but she did not know if appellant followed through on the recommendation. Housing locations outside the city of Bowling Green were out of the question as appellant lacked a vehicle.
 {¶ 20} With regard to appellant's housing, case worker Kelly Hickle-Lentz testified as follows:
 {¶ 21} "Appropriate housing, in our mind, would be housing that would be affordable to [appellant] for the amount of money that she brings in or any assistance she could receive and that would also offer the family some individual space, as well as shared common space."
 {¶ 22} Hickle-Lentz testified that after the children had been in the agency's care for six months, appellant was eligible for Emergency Services Assistance funding. She was told to find housing by June 1, 2004 but she failed to make the deadline. After that date, Hickle-Lentz testified it no longer made sense to request such assistance because of the length of time the children had been in foster care and because appellant was looking at housing priced beyond her means. Hickle-Lentz testified that when she told appellant the agency would not assist her in obtaining the house because of the cost, appellant offered to get a second job. Hickle-Lentz pointed out to her that there was no way to be sure she would have a second job by the time the next month's rent was due.
 {¶ 23} Appellant testified that had the agency assisted her with obtaining the house, she would have gotten a second job. In addition, her boyfriend, Pat Smith, would help with the bills although he would not be living in the house. She testified that she makes between $750 and $800 a month as a convenience store clerk. She testified that she currently has furniture in storage including beds for the children, dressers, a kitchen table and a couch. As for other options, she testified she twice tried to rent from the Green Meadows apartment complex but she could not afford the application fee and the agency would not help her pay it. Another complex turned down her application because of her past eviction and the third complex she looked at was too expensive at $645 a month for a three bedroom apartment. She also looked at two bedroom apartments but the ones she could afford only allowed 4 occupants. She testified that she looks in the newspaper everyday for suitable housing. She defined suitable housing as a place with three bedrooms costing no more than $600 a month.
 {¶ 24} Initially we note that appellant did in fact remedy the conditions that caused the children to be taken out of her home. WCDJFS obtained custody, as a result of appellant's voluntary contact, when appellant and the children were threatened with eviction. By the time of the permanent custody hearing, appellant had been living in the same place for approximately two years and she had maintained steady employment.
 {¶ 25} As for the court's finding that appellant is unwilling to provide adequate housing for her children, we look to the Ohio Supreme Court case of In re William S. (1996),75 Ohio St.3d 95, wherein the court held that in the context of R.C. 2951.414(E), the term "unwilling" is not synonymous with "inability." See also, In re Alexis K. (2005),160 Ohio App.3d 32. The Court found that "[s]ince permanent custody is an extreme measure, the specific factor must be established by clear and convincing evidence." In re William S. (1996),75 Ohio St.3d 95, 100.
 {¶ 26} Based on the record before us, we cannot say the court's finding that appellant is unwilling to find suitable housing is based on clear and convincing evidence. Her attempts were unsuccessful, yet, it is evident from her testimony that she was willing to provide adequate housing. The fact that she was unable to obtain housing that met the standards of WCDJFS does not mean she was unwilling to provide adequate housing for her children. It appears that appellant is caught between the proverbial "rock and a hard place" in that anything she could afford was unacceptable and anything acceptable to WCDJFS was out of appellant's price range. Appellant's efforts in maintaining employment, following her case plan, keeping in touch with her children and seeking out housing in spite of the obstacles she faced shows, in fact, a determined willingness to reunify her family. Accordingly, the court's finding that appellant is unsuitable pursuant to R.C. 2151.414(E)(14) is unfounded. Finding that none of the other statutory predicate findings apply, In reWilliam S., supra, In re Alyssa Nicole C., 153 Ohio App.3d 10,14, 2003-Ohio-2673 at ¶ 8, appellant's sole assignment of error is found well-taken.
 {¶ 27} On consideration whereof, the judgment of the Wood County Court of Common Pleas, Juvenile Division, is reversed. This matter is remanded to that court for further proceedings consistent with this decision. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County. Costs to appellee pursuant to App.R. 24.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Singer, P.J. Parish, J. concur.